SORTINO, J.*
*419 INTRODUCTION
The primary issue in this case is whether the nearly 40-year-old California statutory scheme that governs discovery of peace officer personnel records, when applied to criminal cases, violates due process and is therefore unconstitutional.
Petitioner, the Association for Los Angeles County Deputy Sheriffs (ALADS), is the union that represents non-supervisory Los Angeles County Sheriff's deputies. Real party in interest, Jim McDonnell, is the duly elected Sheriff of Los Angeles County (real party). Other real parties in interest include the Los Angeles County Sheriff's Department (LASD), Los Angeles *57 County, and Does one through 50 (collectively real parties).
In Brady v. Maryland (1963) 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 ( Brady ), the United States Supreme Court held that constitutional due process creates an affirmative obligation on the part of the prosecution, whether or not requested by the defense, to disclose all evidence within its possession that is exculpatory to a criminal defendant. Exculpatory evidence under Brady includes impeachment evidence. ( Giglio v. United States (1972) 405 U.S. 150, 153-155, 92 S.Ct. 763, 31 L.Ed.2d 104 ( Giglio ).) The prosecution's disclosure obligation under Brady extends not only to evidence in its immediate possession, but also to evidence in the possession of other members of the prosecution team, including law enforcement. ( In re Steele (2004) 32 Cal.4th 682, 697, 10 Cal.Rptr.3d 536, 85 P.3d 444, citing Kyles v. Whitley (1995) 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490.)
Eleven years after Brady , the California Supreme Court, in Pitchess v. Superior Court (1974) 11 Cal.3d 531, 537, 113 Cal.Rptr. 897, 522 P.2d 305 ( Pitchess ), held that under certain circumstances, and upon an adequate showing, a criminal defendant may discover information from a peace officer's otherwise confidential personnel file that is relevant to his or her defense. The California Legislature eventually codified what became known as Pitchess motions in Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045 (collectively, the Pitchess statutes). ( *420 People v. Mooc (2001) 26 Cal.4th 1216, 1219-1220, 114 Cal.Rptr.2d 482, 36 P.3d 21 ( Mooc ).)[1] Generally speaking, the Pitchess statutes require a criminal defendant to file a written motion that establishes good cause for the discovery sought. If such a showing is made, the trial court then reviews the law enforcement personnel records in camera with the custodian, and discloses to the defendant any relevant information from the personnel file. ( Mooc , at p. 1226, 114 Cal.Rptr.2d 482, 36 P.3d 21.)
Absent compliance with these procedures, peace officer personnel records, as well as information from them, are confidential and shall not be disclosed "in any criminal or civil proceeding[.]" ( § 832.7, subds. (a) & (f).) Records that cannot be disclosed absent compliance with the Pitchess procedures include the names or identities of peace officers to the extent such a disclosure also links the officers to disciplinary investigations in their personnel files. ( Copley Press, Inc. v. Superior Court (2006) 39 Cal.4th 1272, 1297-1299, 48 Cal.Rptr.3d 183, 141 P.3d 288 ( Copley Press ); accord Long Beach Police Officers Assn. v. City of Long Beach (2014) 59 Cal.4th 59, 71-73, 172 Cal.Rptr.3d 56, 325 P.3d 460 ( Long Beach) ; Commission on Peace Officer Standards & Training v. Superior Court (2007) 42 Cal.4th 278, 295, 298-299, 64 Cal.Rptr.3d 661, 165 P.3d 462 ( POST ).) Prosecutors do not have a superior right of access to law enforcement personnel files, and must also comply with the Pitchess statutes to obtain information from them. ( People v. Superior Court (Johnson) (2015) 61 Cal.4th 696, 714, 206 Cal.Rptr.3d 606, 377 P.3d 847 ( Johnson ).)
In this case, the LASD created a so-called " Brady " list of deputies whose personnel files contain sustained allegations of misconduct allegedly involving moral turpitude or other bad acts relevant to impeachment. The LASD proposed to disclose that list to the district attorney, as well as to other prosecutorial agencies that handle LASD investigations, so that prosecutors in individual cases could file *58 Pitchess motions to discover the underlying misconduct or advise the defense of the disclosure so the defense could file its own Pitchess motion. ALADS opposed disclosure of the Brady list and filed the immediate action. ALADS' lawsuit seeks, in part, an injunction that prohibits disclosure of the list or any individual on the list to anyone outside the LASD, including prosecutors, absent complete compliance with the Pitchess statutes described above.
After full briefing, the trial court filed a thorough and lengthy written tentative ruling. After oral argument, and consistent with that tentative, the court issued a preliminary injunction which prohibits general disclosure of the Brady list to the district attorney or other relevant prosecutors. Consistent with Copley Press , POST , and Long Beach, the trial court determined that such a disclosure, because it identifies administratively disciplined deputies *421 by name in the absence of a properly filed, heard, and granted Pitchess motion, violates the Pitchess statutes.
The injunction, however, expressly allows disclosure of individual deputies from the list to prosecutors, in the absence of compliance with Pitchess statutes, so long as any disclosed deputy is also a potential witness in a pending criminal prosecution. The trial court acknowledged that such a disclosure also violates the Pitchess statutes. The trial court, however, held that a filed criminal case triggers Brady and that the LASD, as part of the prosecution team, then has a " Brady obligation" to disclose exculpatory evidence in its possession. Because of this obligation, the LASD, in the language of the trial court's injunction, "may" notify the prosecutor-in the absence of a fully litigated and granted Pitchess motion-that the identified deputy has a founded administrative allegation of misconduct relevant to his or her credibility.
The trial court's finding that, because of its " Brady obligation," the LASD "may" violate the Pitchess statutes' disclosure prohibition, is, in our opinion, identical to finding that the Pitchess statutes' disclosure prohibition is unconstitutional in the particular context of a filed prosecution wherein a Brady list deputy is a witness. There is simply no lawful way judicially to approve a violation of state law unless compelled to do so by a higher authority: in this case, the United States Constitution as construed in Brady . Also, Brady disclosure is an affirmative, sua sponte, obligation of the prosecution team, meaning the prosecution is required to turn over all exculpatory information in its possession to the defense whether or not the defense requests it. Therefore, to the extent Brady creates a disclosure obligation that overrides Pitchess confidentiality, it is mandatory rather than permissive, no matter how the injunction itself is worded. And, if Brady compels the LASD to violate state law in this fashion, by disclosing the identity of a Brady list deputy in the absence of a fully litigated and granted Pitchess motion where a deputy is also a witness in a filed prosecution, then it compels every state and local law enforcement agency in California to do the same under the same or similar circumstances.[2]
*59 *422 The affirmative disclosure obligation of the prosecution required by Brady and constitutional due process have now coexisted with a criminal defendant's good cause burden under the Pitchess statutes for nearly 40 years. In that time frame, no reported case that we are aware of has found Pitchess or the Pitchess statutes to contravene Brady and thus violate the United States Constitution. In this case, real parties ask us to uphold the trial court's injunction. As explained above, to do so would require us to find the Pitchess statutes unconstitutional insofar as they prohibit, absent compliance with their specific procedures, disclosure to prosecutors of deputies from the Brady list who are also potential witnesses in a pending criminal prosecution. ALADS disagrees that Brady and constitutional due process compel disclosure in the absence of compliance with Pitchess, even if the deputy is a potential witness in a pending criminal prosecution. ALADS seeks an order commanding the trial court to strike language that permits such disclosure from the injunction.
While we understand the appeal of a procedure intended to streamline the disclosure of information that guarantees a criminal defendant's right to a fair trial, we do not write on a blank slate guided only by policy concerns. Both our Supreme Court and at least one Court of Appeal have examined the constitutionality of Pitchess and the Pitchess statutes in light of Brady and found no constitutional infirmity. It is our obligation to follow precedent, whether or not we agree with it; we have no authority, as an intermediate appellate court, to ignore precedent, jump ahead of our Supreme Court, and create new law. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937 ( Auto Equity Sales ).)
Our review of the relevant cases convinces us that the current state of the law supports ALADS. We therefore grant the relief, described above, that ALADS seeks.
FACTUAL HISTORY
Prior to October 14, 2016, the LASD convened a Commander's Panel to review individual deputy personnel files. Based upon this review, the panel *423 identified approximately 300 individual deputies who had administratively founded allegations of misconduct involving moral turpitude, conduct which might be used to impeach the deputy's testimony in a criminal prosecution. The categories of misconduct upon which the panel based its decisions were *60 administratively founded violations of various sections of the Sheriff's Manual of Policy and Procedures: (1) Immoral Conduct (§§ 3-01/030.07), (2) Bribes, Rewards, Loans, Gifts, Favors (§§ 3-01/030.75), (3) Misappropriation of Property (§§ 3-01/040.40), (4) Tampering with Evidence (§§ 3-01/040.65), (5) False Statements (§§ 3-01/040.70), (6) Failure to Make Statements and/or Making False Statements During Departmental Internal Investigations (§§ 3-01/040.75), (7) Obstructing an Investigation/Influencing a Witness (§§ 3-01/040.76), (8) False Information in Records (§§ 3-01/100.35), (9) Policy of Equality-Discriminatory Harassment (§§ 3-01/121.20), (10) Unreasonable Force (§§ 3-01/030.10), and (11) Family Violence (§§ 3-01/030.16).
In order to comply with what it believed to be its obligations under Brady and Johnson , the LASD proposed to send a " Brady list" of these deputies, identified by name and serial number only, to the various prosecutorial agencies that handle cases investigated by the LASD. The list would identify the deputy as having at least one founded violation of the above categories of misconduct in his or her personnel file. In the event such a deputy was or became a witness on a filed or to be filed prosecution, the prosecutor could (1) make a motion pursuant to Pitchess and Evidence Code sections 1043 and 1045, to discover the conduct underlying the deputy's inclusion on the list, or (2) provide the information disclosed by the LASD to the defense so it could make its own Pitchess motion. ( Johnson, supra , 61 Cal.4th at pp. 715-716, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
On October 14, 2016, the LASD sent letters to all affected deputies notifying them of this proposed policy. The letter advised the affected deputy that he or she had a founded allegation of misconduct in his or her personnel file, and that his or her name and serial number would therefore be disclosed to the district attorney, as well as other relevant prosecutorial agencies, in order to comply with Brady . The letter affirmatively stated that records of the investigation itself, as well as the deputy's personnel file, would not be disclosed absent the appropriate Pitchess motion and corresponding court order. The letter also warned of the possibility of assignment transfers, in the event the LASD determined such transfers were necessary to protect the integrity of criminal investigations in light of the disclosures. If the LASD determined such transfers were necessary, the letter advised that proper notice and a hearing would be given, and that "[a]ll due process rights afforded by federal, state, and local law, as well as any applicable union memorandum of understanding (MOU)," would be followed.
The letter also advised any affected deputy who believed his or her name was improperly included on the list to notify LASD Captain Gregory Nelson, *424 in writing, within 12 days. In response to this request, ALADS sent letters on behalf of approximately 92 so-affected deputies.
In a separate declaration, LASD Captain Nelson provided further details of the proposed LASD Brady list policy. The declaration reiterated that only names and serial numbers of affected deputies would be disclosed. Details of investigations or portions of the deputies' personnel files would only be disclosed after a formal Pitchess motion and accompanying court order. The LASD would not take any punitive or disciplinary action against any affected deputy, other than that already imposed for the sustained allegations. The LASD, though, was considering a number of options, including the possibility of assignment changes or restriction to specific *61 duties, to mitigate problems that might arise because of the disclosures and the consequent impaired credibility of any affected deputy. Such options, if executed, would not be punitive, but for the purpose of protecting the integrity of existing or future criminal investigations. Any option utilized, including transfers or restriction of duties, would not result in reduction of salary, rank, or bonus pay. Any affected deputy would be given notice of the change, an opportunity to obtain representation, and a hearing. All due process rights, under federal, state, or local law would be followed at the hearing, and any union MOU would also be honored.
Additionally, Captain Nelson's declaration clarified that any deputy whose founded allegations were eventually overturned or not proven during an appeal to the Los Angeles County Civil Service Commission would not be included on the proposed Brady list.
PROCEDURAL HISTORY
I. ALADS' Petition/Complaint in the Trial Court
On November 10, 2016, ALADS filed its petition for writ of mandate and complaint for temporary restraining order, preliminary injunction, and permanent injunction in the trial court. The petition and complaint allege three causes of action: (1) Code of Civil Procedure section 1085 (writ of mandate), (2) Government Code section 3309.5 (the enforcement section of the Public Safety Officers Procedural Bill of Rights Act (POBRA), Gov. Code, § 3300 et seq. ), and (3) Code of Civil Procedure sections 526 and 527 (injunctive relief).
Overall, the petition seeks a writ of mandate and injunction compelling real parties in interest to comply with the provisions of section 832.5 et seq. (maintenance, use, and confidentiality of peace officer personnel files), Evidence Code section 1043 et seq. ( Pitchess motions), and POBRA, by not *425 (1) disclosing the Brady list or the identity of any individual deputy on the list to the district attorney or any other prosecutorial agency without a court order obtained pursuant to Pitchess and the Pitchess statutes; (2) maintaining in any affected deputy's personnel file the letter mailed October 14, 2016, or any similar letter; (3) taking any punitive action, such as transfer or restriction of duties against any deputy identified on the Brady list; (4) placing any deputy on the Brady list based upon disciplinary action taken over one year after notice to the deputy of the alleged misconduct; (5) placing any deputy on the Brady list based upon disciplinary action that was overturned or found not to be proven during an appeal by the deputy to the Los Angeles County Civil Service Commission; and (6) placing any deputy on the Brady list without first providing the deputy with an opportunity for administrative appeal.
After ALADS filed the petition, both sides stipulated that the Brady list would not be disclosed prior to the trial court ruling on ALADS' request for a preliminary injunction. Prior to oral argument, the trial court posted a lengthy and thorough written tentative ruling that became, in large part, the formal written order partially granting ALADS' request for a preliminary injunction.
II. The Trial Court's Tentative Ruling
A. Brady and Pitchess
In its tentative, the trial court observed that real parties have a statutory obligation to protect the confidentiality of peace officer personnel records. ( §§ 832.7, 832.8.) The court also noted that, as a statutory matter, such records cannot be disclosed to any third party (including prosecutors) absent compliance with *62 Pitchess and Evidence Code section 1043 et seq. Further, even the identity of a peace officer is confidential and not subject to disclosure when connected or linked to employee discipline or investigation of complaints against the officer. ( Copley Press, supra , 39 Cal.4th at pp. 1298-1299, 48 Cal.Rptr.3d 183, 141 P.3d 288.) *426 The trial judge then contrasted these statutory confidentiality obligations with the federal constitutional disclosure obligations of Brady and the cases that followed it. Pursuant to Brady, the prosecution has an affirmative obligation to turn over exculpatory evidence whether or not there is a motion by or request from the defense. ( Johnson, supra , 61 Cal.4th at p. 709, 206 Cal.Rptr.3d 606, 377 P.3d 847.) That affirmative obligation extends to others acting on the prosecution's behalf (the prosecution team). The prosecution team includes law enforcement. ( Kyles v. Whitley (1995) 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 ; Johnson, at p. 709, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Exculpatory evidence includes impeachment evidence. ( Strickler v. Greene (1999) 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 ; Johnson, at p. 710, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
The trial court then concluded that the LASD's plan to circulate, generally, a Brady list of its deputies to the district attorney and other prosecutorial agencies runs afoul of Pitchess and the statutes protecting confidentiality of law enforcement personnel files. Further, the court concluded, such a practice is not constitutionally compelled by Brady , because the LASD's proposed disclosure is not tied to particular deputies involved as potential witnesses in an actual case against a particular defendant. Although, the court concluded, the LASD is a part of the prosecution team subject to Brady' s disclosure obligations, those obligations are triggered only where there is a filed criminal prosecution against a particular defendant and a deputy named on the list is a potential witness in the case. In sum, the trial court observed that "[t]he [LASD] simply is not part of the prosecution team, and is not acting on the prosecution's behalf, in providing the District Attorney a Brady list not tied to a particular prosecution. This is obvious from the fact that there is no Brady duty where there is no prosecution."
Ultimately, the trial court concluded that the LASD is entitled to prepare its own internal Brady list, but is constitutionally required, under Brady , to disclose deputies from that list to the district attorney (or other relevant prosecutor) only when the deputies are involved as witnesses in an actual criminal prosecution. Otherwise, the Pitchess statutes prohibit disclosure, absent compliance with their procedures. When the LASD makes a constitutionally compelled disclosure outside of Pitchess , the prosecution can file its own Pitchess motion to obtain the personnel file and investigation, and then disclose to the defense whatever Brady requires, or simply notify the defense of the disclosure so the defense can file its own Pitchess motion. Either option satisfies the prosecution team's Brady obligations. ( Johnson, supra , 61 Cal.4th at pp. 715-716, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
Essentially, the trial court held that when a deputy on the list is a potential witness in a pending prosecution, Brady creates a federal constitutional disclosure obligation that overrides the state-created confidentiality restrictions of Pitchess and the Pitchess statutes. When a deputy on the list is not involved as a witness in a particular filed prosecution, however, the Brady disclosure obligation is not triggered, and the LASD cannot violate its statutory confidentiality obligation by disclosing *63 names from the list to outside prosecutors in the absence of a properly filed, heard, and granted Pitchess motion.
Based upon its analysis, the trial court concluded that ALADS was likely to succeed on the merits in terms of preventing the wholesale disclosure of the entire Brady list to the district attorney, but was not likely to succeed in terms of preventing disclosure of individual deputies from the list when such deputies were witnesses in filed prosecutions. The trial court also concluded *427 that general disclosure of the list would cause irreparable harm to the reputations of the deputies on the list, while an order enjoining such disclosure would cause no comparable harm to real parties.
B. Government Code Section 3303 et seq. (POBRA)
The trial court also addressed ALADS' claim that the possible transfer or restriction of duties of deputies on the Brady list violates POBRA.
First, the trial court explained that pursuant to Government Code section 3305.5, the LASD and other real parties have a statutory obligation not to take punitive action against a deputy just because his or her name has been placed on a Brady list. Punitive action, as defined in POBRA, is limited: to be punitive, the employer's action must be a personnel action that is disciplinary in nature. ( White v. County of Sacramento (1982) 31 Cal.3d 676, 680-681, 183 Cal.Rptr. 520, 646 P.2d 191.) A transfer is not necessarily disadvantageous to a peace officer and is punitive in nature only if it occurs for the purpose of punishment. ( Id. at p. 683, 183 Cal.Rptr. 520, 646 P.2d 191.) If there is no indication that the agency intends to punish the officer through a transfer, a court cannot deem the transfer punitive because it is aimed at addressing an officer's inability to perform a particular assignment. ( Los Angeles Police Protective League v. City of Los Angeles (2014) 232 Cal.App.4th 136, 142, 181 Cal.Rptr.3d 204.) Mere reassignment or removal from collateral duties without a reduction in salary or rank does not constitute punitive action. ( Perez v. City of Westminster (2016) 5 Cal.App.5th 358, 364-365, 209 Cal.Rptr.3d 504.)
Based upon the above law, the trial court denied ALADS' request to enjoin the LASD from making transfers or taking other action with respect to deputies on the Brady list. The court found that ALADS was unlikely to succeed at trial because it offered no evidence to support its contention that any such action would be punitive in nature, rather than to accommodate the affected deputy's reduced credibility because of founded allegations of bias, moral turpitude, or dishonesty. Further, the court determined that any deputy transferred or restricted to certain duties who believed that such action was punitive, would be able to challenge the reassignment or other change in duties administratively. Thus, alternative remedies were available.
The trial court also denied the balance of ALADS' requests for additional injunctive relief as requested in the petition and complaint.
III. The Preliminary Injunction
The trial court ordered ALADS' counsel to prepare the written order of preliminary injunction. The parties, however, could not agree and went back *428 and forth on the final form of the written preliminary injunction. Initially, ALADS submitted an order that simply enjoined the LASD from releasing the Brady list, or any information from it, to any entity outside the LASD absent a court order issued in response to a properly filed and heard Pitchess motion. Real parties objected, arguing that such an order did not encompass *64 the entirety of the trial court's ruling, since the court carved out an exception to the general prohibition against disclosure for deputies on the list who are also witnesses in a pending criminal prosecution. Additionally, real parties objected because the written injunction did not include the trial court's ruling that possible transfers or restrictions of duty do not violate POBRA.
ALADS submitted two forms of the written order for preliminary injunction: one consistent with its original order, and one consistent with real parties' requested changes. Each side filed formal objections to the opposing side's proposed order. The trial court signed, and on January 27, 2017, filed the written preliminary injunction requested by real parties. That order enjoins real parties from a number of actions: (1) disclosing the Brady list as a whole to any party outside the LASD; (2) disclosing the identity of any individual deputy on the Brady list to any party outside the LASD, except a relevant prosecutorial agency, and then only if the deputy is a potential witness in a pending criminal prosecution; and (3) except as provided in (2) above, disclosing the identity of any individual deputy on the Brady list to any party outside the LASD, including prosecutorial agencies, unless compelled by a court order issued after a properly filed and heard Brady or Pitchess motion.
The order then recites additional "clarifying" principles: (1) the LASD is not precluded from creating and maintaining an internal Brady list; (2) the LASD is not precluded from taking action against any deputy because he or she is on the Brady list, including transfer or restriction of duties; and (3) the LASD is not precluded from disclosing any future Brady list to prosecutorial agencies insofar as it consists only of non-sworn employees not subject to POBRA. With respect to clarifying principle (2) above, the injunction adds that any deputy so affected by transfer, restriction of duty, or other action who believes the action to be punitive under POBRA, retains all administrative rights under POBRA to challenge and overturn such action.
IV. ALADS' Immediate Petition for Writ of Mandate
ALADS filed the immediate petition for writ of mandate on February 14, 2017. In the petition, ALADS seeks an order to strike or stay enforcement of the portions of the written preliminary injunction that state that "the enjoined parties are not precluded from" (1) maintaining an internal Brady list; (2) disclosing to the relevant prosecutorial agency the identity of any deputy on *429 the Brady list, in the absence of a properly filed Pitchess motion and accompanying court order, so long as the deputy is a potential witness in a pending criminal prosecution; (3) transferring, restricting duties of, or otherwise taking action against any deputy because he or she is on the Brady list; and (4) creating and disclosing any future Brady list that includes only non-sworn employees outside the scope of POBRA.
We initially granted ALADS' request for an immediate stay and ordered a preliminary response to the petition from real parties, as well as a reply to that response from ALADS. Subsequently, we issued an order to show cause to the trial court why ALADS should not be granted the relief it seeks, to which real parties filed a return and ALADS filed a reply to the return.
DISCUSSION
I. Review by Appeal or Review by Petition for Writ of Mandate
At the outset, we must determine whether it is appropriate to review the *65 trial court's order of preliminary injunction by way of the immediate petition for writ of mandate or by way of a later appeal.
Code of Civil Procedure section 904.1, subdivision (a)(6), permits review by appeal from "an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction." The intent of the statute " 'is that all orders granting or refusing injunctions, whether temporary or permanent or provisional pending appeal, shall be appealable.' " ( Western Electroplating Co. v. Henness (1959) 172 Cal.App.2d 278, 283, 341 P.2d 718 [construing former Code of Civ. Proc., § 963, the predecessor to Code of Civ. Proc., § 904.1 ].) Thus, the order by the court below granting, in part, ALADS' request for a preliminary injunction, is appealable.
Ordinarily, a judgment that is immediately appealable is not subject to review by mandate or any other extraordinary writ. ( Powers v. City of Richmond (1995) 10 Cal.4th 85, 112, 40 Cal.Rptr.2d 839, 893 P.2d 1160.) Mandate, though, is available to review an appealable judgment when the remedy by appeal would be inadequate or the issues presented are of public importance and must be resolved quickly. ( Id. at p. 113, 40 Cal.Rptr.2d 839, 893 P.2d 1160.)
The primary issue in this case is whether a statewide statutory discovery procedure that has been in effect for nearly 40 years violates the Constitution, as construed in Brady, when enforced in the context of a filed criminal prosecution that includes as witnesses, peace officers with founded allegations of misconduct, relevant to veracity, in their personnel files. That procedure affects every state and local law enforcement agency in California, and *430 potentially every state criminal prosecution wherein a state or local peace officer is a witness. As of 2008, there were 509 state or local law enforcement agencies within California that employed a total of 79,431 sworn personnel.[3] In this case, the trial court effectively held that law enforcement agencies have an affirmative constitutional obligation under Brady , in the absence of any compliance with the Pitchess statutes, to notify the prosecutor whenever one of their peace officers has a founded allegation of misconduct involving moral turpitude in his or her personnel file, so long as that officer is also a potential witness in a pending criminal case. The necessary corollary of this holding is that the Pitchess statutes, which require any party outside of the law enforcement agency-including the prosecutor-to make a showing of good cause before obtaining such a disclosure, are unconstitutional in this specific context.
While the trial court's ruling binds only the parties before it, this case is now before the Court of Appeal. Were we to agree with the trial court in a published opinion, the ruling would become binding upon trial courts throughout the state. (See Auto Equity Sales, supra , 57 Cal.2d at p. 455, 20 Cal.Rptr. 321, 369 P.2d 937.) The ruling, imposed statewide, would materially change the way discovery of information from peace officer personnel records in criminal cases has been conducted for the past four decades. As a practical matter, it would require all state and local law enforcement agencies to notify prosecutors, on an ongoing basis as cases are filed, whenever an officer who is a witness has a founded allegation of misconduct in *66 his or her personnel file relevant to veracity. Such a requirement would affect hundreds of law enforcement agencies and untold numbers of individual peace officers across the state. This case thus raises issues of public importance that must be resolved quickly. We therefore exercise our discretion and accept review of the trial court's decision by way of ALADS' petition for writ of mandate.
II. Standard of Review
When deciding whether to issue a preliminary injunction, a trial court considers two factors: (1) the reasonable probability that the party seeking the injunction will prevail on the merits at trial and (2) a comparison of the "irreparable harm" that will be suffered by that party if the preliminary injunction is denied to the "irreparable harm" that will be suffered by the opposing party if the preliminary injunction is granted. ( Code Civ. Proc., § 526, subd. (a)(1), (2) ; People ex rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 1109, 60 Cal.Rptr.2d 277, 929 P.2d 596 ; 14859 Moorpark Homeowner's Assn. v. VRT Corp. (1998) 63 Cal.App.4th 1396, 1402, 74 Cal.Rptr.2d 712.)
*431 Ordinarily, the trial court's evaluation of the two foregoing factors is reviewed on appeal for abuse of discretion. ( Hunter v. City of Whittier (1989) 209 Cal.App.3d 588, 595, 257 Cal.Rptr. 559.) Questions of law, however, that are decided by the trial court in the course of its evaluation of the moving party's likelihood of success on the merits are reviewed de novo. ( Law School Admission Council, Inc. v. State of California (2014) 222 Cal.App.4th 1265, 1280-1281, 166 Cal.Rptr.3d 647.) The trial court's determination of constitutional questions is also reviewed de novo. ( Ibid. )
We agree, in large part, with the trial court's reasonable probability of success/balance of harms analysis and find no abuse of discretion in its decision to issue a preliminary injunction. Based upon our de novo review, though, we find that the trial court erred in its analysis of the constitutional question presented by this case and improperly limited the scope of its injunction.
III. Analysis of the Merits
As mentioned above, in this petition ALADS seeks relief from various portions of the trial court's written injunction: specifically, those portions that expressly do not prohibit the LASD from (1) maintaining an internal Brady list; (2) disclosing to the relevant prosecutorial agency the identity of any deputy on the Brady list who is a potential witness in a pending criminal prosecution where no order pursuant to a properly filed Pitchess motion has been obtained; (3) transferring, restricting duties of, or otherwise taking action against any deputy because he or she is on the Brady list; and (4) creating and disclosing any future Brady list that includes only non-sworn employees outside the scope of POBRA. The first two depend upon an analysis of the interplay between Brady and Pitchess , the third upon an analysis of POBRA, and the fourth upon general concepts of notice and due process. We analyze each in turn.
A. Brady and Pitchess
In Brady, supra , 373 U.S. at page 87, 83 S.Ct. 1194, the United States Supreme Court held that federal constitutional due process creates an obligation on the part of the prosecution to disclose all evidence within its possession that is favorable to the defendant and material on the issue of guilt or punishment. In Giglio v. United States , supra , 405 U.S. at pages 153 through 155, 92 S.Ct. 763, the Court held that Brady evidence includes evidence *67 that impeaches prosecution witnesses, even if it is not inherently exculpatory. Further, the prosecution's disclosure obligation under Brady extends to evidence collected or known by other members of the prosecution team, including law enforcement, in *432 connection with the investigation of the case. ( In re Steele (2004) 32 Cal.4th 682, 697, 10 Cal.Rptr.3d 536, 85 P.3d 444, citing Kyles v. Whitley, supra , 514 U.S. at p. 437, 115 S.Ct. 1555.)
Evidence is material under Brady if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed. ( United States v. Bagley (1985) 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481.) The prosecution's duty to disclose exists whether or not the defendant specifically requests the information. ( United States v. Agurs (1976) 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342.)
In Pitchess , the California Supreme Court held that under certain circumstances, and upon an adequate showing, a criminal defendant may discover information from a peace officer's otherwise confidential personnel file that is relevant to a defense of the charge against him or her. ( Mooc, supra , 26 Cal.4th at pp. 1216, 1219, 114 Cal.Rptr.2d 482, 36 P.3d 21.) Pitchess involved a defense request for information related to the complaining deputies' propensity for violence or use of excessive force as a defense to battery on peace officer charges. ( Pitchess , supra , 11 Cal.3d at p. 534, 113 Cal.Rptr. 897, 522 P.2d 305.) The reasoning of Pitchess, however, has been extended to defense requests for evidence of a peace officer's dishonesty, instances of fabrication, or other acts amounting to moral turpitude. ( Johnson, supra , 61 Cal.4th at p. 710, 206 Cal.Rptr.3d 606, 377 P.3d 847 ; Rezek v. Superior Court (2012) 206 Cal.App.4th 633, 640, 141 Cal.Rptr.3d 891.)
In 1978, the California Legislature codified the privileges and procedures discussed in Pitchess in sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045. ( Mooc , supra , 26 Cal.4th at pp. 1219-1220, 114 Cal.Rptr.2d 482, 36 P.3d 21.) Generally speaking, the Pitchess statutes require a criminal defendant to file a written motion that identifies and demonstrates good cause for the discovery sought. If such a showing is made, the trial court then reviews the law enforcement personnel records in camera with the custodian, and discloses to the defendant any relevant information from the personnel file. ( Mooc , at p. 1226, 114 Cal.Rptr.2d 482, 36 P.3d 21 ; see also Evid. Code, § 1043.) Absent compliance with these procedures, section 832.7, subdivision (a), provides that peace officer personnel files, and information from them, "are confidential and shall not be disclosed in any criminal or civil proceeding [.]" (See also § 832.7, subd. (f).) The prosecution, like the defense, cannot discover peace officer personnel records without first following the Pitchess procedures. ( Alford v. Superior Court (2003) 29 Cal.4th 1033, 1046, 130 Cal.Rptr.2d 672, 63 P.3d 228 ; Johnson, supra, 61 Cal.4th at p. 714, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Any records disclosed are subject to a mandatory protective order that they be used only for the purpose of the court proceeding for which they were sought. ( Alford, at p. 1042, 130 Cal.Rptr.2d 672, 63 P.3d 228 ; see Evid. Code, § 1045, subd. (e).)
*433 The standard of "good cause" required for Pitchess disclosure-materiality to the subject matter of the litigation and a reasonable belief that the noticed agency has the type of information sought-is relatively relaxed and guarantees inspection and production of all potentially relevant documents. ( *68 Johnson, supra , 61 Cal.4th at p. 711, 206 Cal.Rptr.3d 606, 377 P.3d 847.) The Brady test of materiality is much narrower than that employed by Pitchess : under Pitchess , a defendant need only show that the information sought is material to the subject matter of the litigation, whereas Brady requires that the information sought be material to the outcome of the litigation. ( Johnson, at p. 711, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Thus, any information that satisfies Brady' s test of materiality necessarily meets the standard required for disclosure under Pitchess . ( Johnson, at pp. 711-712, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
The Pitchess statutes protect the confidentiality of peace and custodial officer "personnel records," as well as any "information obtained from [them]." ( § 832.7, subd. (a).) "Personnel records" include any file maintained under an individual's name by his or her employing agency that contains records which relate to (1) personal data; (2) medical history; (3) election of employee benefits; (4) employee advancement, appraisal, or discipline; (5) complaints, or investigations of complaints, involving any event pertaining to the performance of the peace officer's duties which he or she participated in or perceived; and (6) any other information the disclosure of which would constitute an unwarranted invasion of personal privacy. ( § 832.8, subds. (a) - (f).)
The information protected by the confidentiality and disclosure procedures of the Pitchess statutes is broad. Thus, the identity of a peace officer that is derived from his or her personnel file, to the extent it connects that officer to administrative disciplinary proceedings or complaints of misconduct also contained within the protected personnel file, may not be disclosed absent compliance with the Pitchess procedures. ( Copley Press, supra , 39 Cal.4th at pp. 1297-1299, 48 Cal.Rptr.3d 183, 141 P.3d 288 ; accord Long Beach, supra , 59 Cal.4th at pp. 71-73, 172 Cal.Rptr.3d 56, 325 P.3d 460 ; POST , supra , 42 Cal.4th at pp. 295, 298-299, 64 Cal.Rptr.3d 661, 165 P.3d 462.)
This rule applies even if the information connected to the identified officer is only generic in nature. We base this conclusion on the interplay of two subdivisions within section 832.7, as well as the plain language of Copley Press .
As discussed above, section 832.7, subdivision (a), prohibits disclosure of peace officer personnel records or information obtained from them "in any criminal or civil proceeding" absent compliance with the Pitchess procedures. Section 832.7, subdivision (c), however, creates an exception to the disclosure prohibition of subdivision (a): "[n]otwithstanding subdivision (a), a department or agency that employs peace ... officers may disseminate *434 data regarding the number, type, or disposition of complaints (sustained, not sustained, exonerated, or unfounded) made against its officers if that information is in a form which does not identify the individuals involved ." (Italics added.) Copley Press ultimately held that "[t]he language limiting the information that may be disclosed under [ section 832.7, subdivision (c),] demonstrates that section 832.7, subdivision (a), is designed to protect, among other things, 'the identity of officers' subject to complaints. [Citation.]" ( Copley Press, supra , 39 Cal.4th at p. 1297, 48 Cal.Rptr.3d 183, 141 P.3d 288.) In other words, if section 832.7, subdivision (c), creates an exception for the generic type of information described therein so long as it does not identify the officer, it necessarily implies that section 832.7, subdivision (a), prohibits disclosure of such information to the extent it does identify the officer.
The dissent asserts that Copley Press , POST , and Long Beach are distinguishable *69 from the present case because each involves California Public Records Act of 1968 (CPRA; Gov. Code, § 6250 et seq. ) requests for Pitchess information from media organizations, rather than disclosures to prosecutors with Brady obligations. (Conc. & dis. opn. post, at pp. 83-84.) Thus, the dissent concludes, the Pitchess procedures do not prohibit the generic disclosure allowed by the trial court's injunction. (Conc. & dis. opn. post, at p. 84.)
While this factual difference is accurate, we find it to be a difference without significance. The Pitchess statutes and their requirements do not make distinctions among who is seeking the information, or the type of proceedings in which or for which they are sought: "[p]eace officer or custodial officer personnel records ... or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to [s]ections 1043 and 1046 of the Evidence Code." (§ 832.7, subd. (a); see also Johnson, supra , 61 Cal.4th at p. 714, 206 Cal.Rptr.3d 606, 377 P.3d 847 [prosecutors have no superior right to access Pitchess information and must comply with Pitchess procedures to obtain confidential information from peace officer personnel files].) The plain language of section 832.7, subdivision (a), categorically prohibits disclosure absent compliance with the Pitchess statutes. The confidentiality of the information protected by the Pitchess statutes does not depend upon who is seeking it or for what purpose it is sought.
The dissent also contends that Copley Press is distinguishable because the disclosure here "does not involve records of any specific disciplinary incident-or any records at all." (Conc. & dis. opn. post, at p. 84.) The argument appears to be that simply identifying a deputy and indicating that he or she has at least one founded administrative allegation of misconduct relevant to his or her veracity is too generic to be considered information within the protection of the Pitchess statutes.
*435 Again, we disagree. First, section 832.7, subdivision (a), protects not only personnel records, but all "information obtained from these records." Notifying an outside agency, even a prosecutor's office, that a deputy has an administratively founded allegation of misconduct involving moral turpitude cannot be characterized as anything other than disclosing information obtained from the peace officer's personnel file. Moreover, as discussed earlier, based upon the exception created by section 832.7, subdivision (c), Copley Press rejected the notion that generic complaint information which identifies a particular officer is outside the disclosure prohibition of section 832.7, subdivision (a). ( Copley Press, supra, 39 Cal.4th at p. 1297, 48 Cal.Rptr.3d 183, 141 P.3d 288.)
1. Creating and Maintaining an Internal Brady List
ALADS objects to the written injunction's provision that the LASD is "not precluded from maintaining a Brady list internally[.]"
The language objected to is contained in the portion of the injunction which begins, "For purposes of clarifying the Enjoined Parties' obligations under this injunction[.]" That qualifier is then followed by descriptions of various conduct not precluded: (1) creation and maintenance of an internal Brady list, (2) transfers or restrictions of duties of Brady list deputies, and (3) creation and disclosure of Brady lists that include only non-sworn personnel. ALADS contends, generally, that describing the conduct above as "not precluded" affirmatively authorizes that conduct, relief which real parties never noticed or formally requested. Such affirmative *70 relief, ALADS continues, granted without formal request or notice by any of the real parties, offends basic concepts of proper notice and due process.
ALADS' argument is not persuasive. By inference, ALADS raised the issue of the legality of an internal Brady list in its original petition and complaint since it essentially objected to the creation of a Brady list based upon already founded misconduct unless the LASD first offered a current administrative appeal. Moreover, the issue of the legality of such an internal list was discussed in both the trial court's tentative and during the preliminary injunction hearing. During the hearing, ALADS did not object to the issue being raised.
Finally, the language of the preliminary injunction, considered as a whole and in context, does not affirmatively authorize the LASD to prepare the list. Although not express, implicitly the language only clarifies or limits the extent of the prohibitions contained elsewhere in the injunction: thus, we read this part of the injunction simply to mean that nothing in the preliminary injunction prohibits the LASD from creating the list, so long as it does not disclose it to any person or entity outside the LASD. In other words, the *436 language does not affirmatively compel or even authorize the LASD to review personnel records and create a Brady list, it simply indicates that the injunction does not prohibit the LASD from doing so. In terms of a notice and/or due process issue, we find none. The trial court was merely ensuring that the precise limits of its injunctive relief were understood by the affected parties.
Moreover, we agree with the trial court on the substantive merits of this issue. The Pitchess statutes prohibit the disclosure of peace officer personnel records to persons or entities outside the law enforcement agency absent compliance with their procedures. Neither Pitchess nor the statutes discuss, let alone prohibit, the internal collection of data, based upon past events found to have occurred after an investigation and administrative hearing by the employing law enforcement agency. Thus, we find no violation of Pitchess or the Pitchess statutes insofar as the LASD reviews already existing personnel records, and simply compiles or creates a summary or categorization of information already contained in those files for internal use only. (See Michael v. Gates (1995) 38 Cal.App.4th 737, 745, 45 Cal.Rptr.2d 163 [the Pitchess statutory scheme "regulate[s] the use of peace officer personnel records in civil and criminal proceedings"; "[i]t was not intended to, and does not, create substantive or procedural obstacles to a police agency's review of its own files"].)
2. Disclosure of Identity if Deputy Is a Witness in a Pending Case
This, we believe, is ALADS' primary objection to the trial court's order: the injunction, as worded, does not prohibit the LASD from disclosing Brady list deputies to the district attorney, or other prosecutorial agency, so long as the deputies are also potential witnesses in a pending criminal prosecution, even in the absence of a properly filed, heard, and granted Pitchess motion.
The trial court concluded, and, for the reasons stated in Part III.A, ante , we agree, that such disclosure violates Pitchess and the Pitchess statutes. Based upon LASD personnel records, the proposed disclosure identifies the deputy by name and serial number and connects him or her to administratively sustained allegations of misconduct involving moral turpitude or other bad acts, without first complying with the Pitchess procedures.
*71 ( Copley Press, supra, 39 Cal.4th at pp. 1297-1299, 48 Cal.Rptr.3d 183, 141 P.3d 288 ; accord Long Beach, supra, 59 Cal.4th at pp. 71-73, 172 Cal.Rptr.3d 56, 325 P.3d 460 ; POST , supra, 42 Cal.4th at pp. 295, 298-299, 64 Cal.Rptr.3d 661, 165 P.3d 462.) The trial court nevertheless found that constitutional due process, as construed in Brady , requires this violation of state law because it creates an affirmative obligation of disclosure that overrides the state confidentiality protections created by the Pitchess statutes. Thus, in order to affirm the trial court, we must find that the *437 procedures required by the Pitchess statutes prior to disclosure are unconstitutional when a Brady list deputy is also a potential witness in a pending criminal prosecution.
In this regard, real parties have a tough row to hoe. Courts will presume that a duly enacted statute is constitutional unless its unconstitutionality appears "clearly, positively, and unmistakably." In making this analysis, all "presumptions and intendments favor its validity." ( City of Los Angeles v. Superior Court (2002) 29 Cal.4th 1, 10-11, 124 Cal.Rptr.2d 202, 52 P.3d 129 ( City of Los Angeles ).)
Additionally, and most importantly, the California Supreme Court, as a general matter, has at least twice expressly observed that the statutory Pitchess procedures do not violate either Brady or constitutional due process, but rather, supplement both. In City of Los Angeles , the court held that the Pitchess statutes' limitation of discoverable complaints to those five years old or less does not violate the requirements of Brady. ( City of Los Angeles, supra , 29 Cal.4th at p. 16, 124 Cal.Rptr.2d 202, 52 P.3d 129.) In defense of its holding, the court agreed with the Attorney General that the " ' " Pitchess process" operates in parallel with Brady and does not prohibit the disclosure of Brady information.' " ( City of Los Angeles, at p. 14, 124 Cal.Rptr.2d 202, 52 P.3d 129.)
In Mooc , the court "examine[d] the nuts and bolts of a Pitchess motion," and what such a motion requires of both the custodian and the court conducting the in camera review of records. In doing so, the court specifically noted that the Pitchess "procedural mechanism for criminal defense discovery, which must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial [citations omitted], is now an established part of criminal procedure in this state." ( Mooc, supra , 26 Cal.4th at pp. 1225-1226, 114 Cal.Rptr.2d 482, 36 P.3d 21.) The Mooc court also observed that Pitchess "and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial." ( Mooc, at p. 1227, 114 Cal.Rptr.2d 482, 36 P.3d 21.) In neither City of Los Angeles nor Mooc did our Supreme Court suggest that there is any conflict between Brady and Pitchess.
In addition to the more general observations of our Supreme Court in City of Los Angeles and Mooc , a relatively recent decision by our colleagues in Division Three of this District expressly considered, and rejected, a constitutional challenge that involves issues similar to those raised in this case. In People v. Gutierrez (2003) 112 Cal.App.4th 1463, 1468, 6 Cal.Rptr.3d 138, *438 review denied January 28, 2004, S120823 ( Gutierrez ), a jury convicted the defendant of forcible oral copulation and forcible sexual penetration by foreign object while acting in concert. Prior to trial, the defendant *72 filed a Pitchess motion which sought discovery from the personnel files of two Los Angeles Police Department officers who were percipient witnesses to at least some portion of the charged acts. ( Gutierrez, at p. 1470, 6 Cal.Rptr.3d 138.) The trial court denied the motion and did not conduct an in camera review, finding the defendant did not make the preliminary showing of good cause required by the Pitchess statutes. ( Ibid . )
On appeal, the defendant contended that the statutory Pitchess procedures violated Brady because (1) they interfered with the prosecutor's affirmative obligation to ascertain and disclose exculpatory evidence and (2) placed upon a defendant the burden of establishing good cause for an otherwise obligatory Brady disclosure. ( Gutierrez, supra , 112 Cal.App.4th at pp. 1468, 1470-1471, 6 Cal.Rptr.3d 138.)
The Court of Appeal rejected defendant's contentions. Relying in part on City of Los Angeles, the Gutierrez court found that the materiality standard of Pitchess is both "broader and lower" than that of Brady . ( Gutierrez, supra , 112 Cal.App.4th at p. 1474, 6 Cal.Rptr.3d 138.) Thus, any defendant who meets the good cause required for Pitchess discovery, will also necessarily obtain any Brady material in the officer's file. ( Gutierrez, at p. 1474, 6 Cal.Rptr.3d 138.) Conversely, a defendant who cannot even meet the less stringent Pitchess materiality standard, by definition cannot meet the higher Brady standard. ( Gutierrez, at p. 1474, 6 Cal.Rptr.3d 138.) Thus, the court concluded, " Pitchess procedures implement Brady rather than undercut it, because a defendant who cannot meet the less stringent Pitchess standard cannot establish Brady materiality." ( Gutierrez, at p. 1474, 6 Cal.Rptr.3d 138.) The court also held that the prosecution has no obligation to search the law enforcement personnel files. Absent a successful Pitchess motion of its own, the prosecution has no right of access to and thus no constructive possession of personnel files or their content. ( Gutierrez, at pp. 1474-1475, 6 Cal.Rptr.3d 138.) Since the prosecution has no general access to or constructive possession of law enforcement personnel files, it cannot be expected to review and disclose information from them. ( Id. at p. 1475, 6 Cal.Rptr.3d 138.)
The Gutierrez court also rejected defendant's contention that Pitchess unconstitutionally required him to make a good cause showing before obtaining evidence he was entitled to under Brady. ( Gutierrez, supra, 112 Cal.App.4th at p. 1475, 6 Cal.Rptr.3d 138.) The court held that a preliminary demonstration of materiality is a valid prerequisite to disclosure of evidence contained in conditionally privileged state agency files. ( Id . at pp. 1475-1476, 6 Cal.Rptr.3d 138 ; see also Garden Grove Police Department v. Superior Court (2001) 89 Cal.App.4th 430, 435, 107 Cal.Rptr.2d 642 ["[w]e cannot allow [defendant] to make an *439 end run on the Pitchess process by requesting the officers' personnel records under the guise of ... section 1054.1 and Brady discovery motion"].)
In support of this position, the Gutierrez court relied upon Pennsylvania v. Ritchie (1987) 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 ( Ritchie ). In Ritchie , defendant sought access to a state child protective services file, a government agency that participated in the investigation of the child molestation charges against him. ( Ritchie , at p. 43, 107 S.Ct. 989.) The trial court refused to order disclosure, finding the file conditionally privileged under state law. ( Ritchie , at p. 44, 107 S.Ct. 989.)
On appeal, the United States Supreme Court construed defendant's argument for disclosure as a Brady due process challenge to the state confidentiality rules. ( *73 Ritchie , supra , 480 U.S. at pp. 56-57, 107 S.Ct. 989.) The Court first recognized that Brady and its progeny obligate the government to disclose favorable, material evidence to the accused. ( Ritchie , at p. 57, 107 S.Ct. 989.) The Court ultimately rejected the trial court's blanket denial of access to the file, and remanded the case so that the trial court could review the conditionally privileged file, determine whether any information in the file was exculpatory and material under Brady , and then order disclosure if necessary. ( Ritchie , at pp. 57-58, 107 S.Ct. 989.) Significantly, the Court observed that defendant, "of course , may not require the trial court to search through the [agency] file without first establishing a basis for his claim that it contains material evidence." ( Ritchie , at p. 58, fn. 15, 107 S.Ct. 989, italics added.) Thus, Ritchie found no constitutional problem with requiring a defendant to make a preliminary showing of good cause before discovery of conditionally privileged state investigative files.
Pitchess and the Pitchess statutes require no more than what was required of the defendant in Ritchie. We agree with the reasoning of Gutierrez and Ritchie, as well as the more general conclusions regarding the constitutionality of Pitchess procedures made in City of Los Angeles and Mooc. Furthermore, we agree with the trial court that disclosure of a deputy from the Brady list will cause stigma and irreparable harm to the individual deputy's reputation, while non-disclosure will cause no comparable harm to the LASD or the other real parties. Accordingly, we grant, in part, ALADS' petition for writ of mandate. The language in the injunction that allows the LASD, or any real party, to disclose the identity of any individual deputy on the Brady list to any agency or individual outside the LASD, absent a properly filed and granted Pitchess motion and corresponding court order, even if the affected deputy is a potential witness in a filed criminal prosecution, must be stricken.
Setting aside, for the moment, our holding that Pitchess and the Pitchess statutes do not violate constitutional due process as defined in Brady, we note *440 one other issue with the trial court's injunction: as worded, the injunction allows disclosure outside of the Pitchess procedures whenever a Brady list deputy is a "potential" witness in a pending criminal prosecution. Not all "potential" LASD witnesses in a criminal case, however, will be significant enough that impeachment information in their personnel files will be material, which Brady requires as a prerequisite to disclosure. For example, while the credibility of a homicide detective who obtains an unrecorded confession from a murder defendant would likely be a material issue at trial, that of a patrol deputy who simply arrests the defendant but otherwise generates no incriminating evidence likely would not be. In the latter situation, impeachment information in the deputy's personnel file likely would not be material under Brady and thus there would be no disclosure obligation, even if we assume the validity of the trial court's constitutional rationale, that justifies ignoring the requirements of the Pitchess statutes. The injunction, though, permits violation of the Pitchess statutes in both situations described above, since it treats potential witnesses identically regardless of their materiality. The injunction is therefore overbroad even if we assume the validity of its own rationale.
a. Johnson and the Attorney General Opinion
In their argument in favor of the trial court's injunction allowing disclosure of Brady list deputies who are potential witnesses in pending criminal prosecutions, real parties rely largely on the 2015 California *74 Supreme Court decision in Johnson and the California Attorney General Opinion ostensibly based upon it. ( 98 Ops.Cal.Atty.Gen. 54 (2015) (Opinion).) This reliance is misplaced.
We address Johnson first. In August 2010, the San Francisco Police Department (Department) created its own Brady policy through the enactment of Bureau Order No. 2010-01 (Order). ( Johnson, supra , 61 Cal.4th at pp. 706-707, 724, 206 Cal.Rptr.3d 606, 377 P.3d 847, appen.) The Order explained that because of repetitive requests from the district attorney to check personnel files of employees who might be witnesses in criminal trials, the Department was compiling a list of employees who had information in their personnel files that might be discoverable under Brady , and intended to disclose that list to the district attorney. ( Johnson, at pp. 706-707, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
The Order set up a procedure similar to that proposed by real parties in the immediate case: "the [Department] will identify potential Brady material on an ongoing basis and notify the district attorney's office on an ongoing basis that the personnel files for particular officers may contain Brady material. When the police department becomes aware of potential Brady material regarding an officer, it creates a synopsis identifying the officer, the conduct, *441 and the documents and information for potential disclosure. A departmental ' " Brady Committee" ' reviews the synopsis and, after notifying and permitting comment from the affected employee, recommends to the chief of police whether to disclose the employee's name to the district attorney. The chief of police either approves or disapproves the recommendation. If disclosure of an officer's name is approved, the district attorney is notified that the officer 'has material in his or her personnel file that may be subject to disclosure under' Brady ." ( Johnson , supra , 61 Cal.4th at p. 707, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
The underlying criminal case in Johnson charged defendant with various domestic violence crimes. ( Johnson , supra , 61 Cal.4th at p. 706, 206 Cal.Rptr.3d 606, 377 P.3d 847.) The material witnesses in the case included two San Francisco Police Department officers. ( Ibid. ) The prosecutor, notified pursuant to the Order that both officers had Brady material in their personnel files, so advised the trial court and filed a Pitchess motion seeking discovery of the information. ( Johnson, at p. 706, 206 Cal.Rptr.3d 606, 377 P.3d 847.) In a declaration attached to the motion, the prosecutor also advised the court that both officers were " 'necessary and essential' prosecution witnesses." ( Ibid . ) In response, defendant filed his own Pitchess / Brady motion, and asked the court either to (1) conduct the Pitchess in camera review or (2) declare section 832.7 unconstitutional and order the Department to turn over the personnel files to the prosecutor for Brady review. ( Johnson , at pp. 707-708, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
The trial court denied the request for in camera review, finding that the prosecution had not made the required Pitchess good cause showing. ( Johnson , supra , 61 Cal.4th at p. 708, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Further, the trial court held that section 832.7 was unconstitutional, and ordered the Department to turn over both officers' personnel files to the prosecutor for Brady review. ( Johnson , at p. 708, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Both the Department and the District Attorney's Office challenged the trial court's ruling by filing writs in the Court of Appeal. ( Ibid. )
The Court of Appeal stayed the trial court order and issued an order to show *75 cause. ( Johnson , supra , 61 Cal.4th at p. 708, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Ultimately, the Court of Appeal held that the prosecution may, and before the court becomes involved, should, review the personnel files of peace officer witnesses in order to satisfy its constitutional Brady obligation. ( Johnson , at pp. 708-709, 206 Cal.Rptr.3d 606, 377 P.3d 847.) It directed the trial court to modify its earlier order to provide that, if the prosecution found Brady material during its review of the personnel files, it must file a Pitchess motion to obtain authorization before disclosure to the defense. ( Johnson , at pp. 709, 713, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
On review, the California Supreme Court reversed the Court of Appeal insofar as it ordered, or even allowed, the prosecution to review law enforcement personnel files absent a properly filed Pitchess motion and accompanying court order. ( Johnson, supra , 61 Cal.4th at pp. 713, 723, 206 Cal.Rptr.3d 606, 377 P.3d 847.) The *442 court recognized that the prosecution has no greater right of access to law enforcement personnel files than does the defense. ( Johnson, at pp. 712-713, 206 Cal.Rptr.3d 606, 377 P.3d 847.) The prosecution, like the defense, must comply with Pitchess procedures if it seeks access to information from confidential law enforcement personnel files. ( Johnson, at p. 714, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
The court then addressed the prosecution's Brady obligation when, as in the case before it, the law enforcement agency discloses to it that a witness officer may have Brady material in his or her personnel file. The court held that the prosecution is obligated to do nothing more than notify the defendant of the information provided to it; it is not required to make its own Pitchess motion and then disclose what it discovers as a result of that motion. The defense can decide whether, based upon that notice, it wishes to file its own Pitchess motion. ( Johnson, supra , 61 Cal.4th at pp. 715-716, 206 Cal.Rptr.3d 606, 377 P.3d 847.) " '[T]he prosecutor [has] no constitutional duty to conduct defendant's investigation for him. Because Brady and its progeny serve "to restrict the prosecution's ability to suppress evidence rather than to provide the accused a right to criminal discovery," the Brady rule does not displace the adversary system as the primary means by which truth is uncovered.' " ( Johnson , at p. 715, 206 Cal.Rptr.3d 606, 377 P.3d 847, quoting United States v. Martinez-Mercado (5th Cir. 1989) 888 F.2d 1484, 1488.)
The defendant in Johnson argued that California's Pitchess procedures were inadequate to protect his right to exculpatory information under Brady. The court flatly rejected that argument and reiterated the observations it made previously in both City of Los Angeles and Mooc : "The Brady requirements and Pitchess procedures have long coexisted. '[T]he Pitchess scheme does not unconstitutionally trump a defendant's right to exculpatory evidence as delineated in Brady. Instead, the two schemes operate in tandem.' [Citation.] We are confident that trial courts employing Pitchess procedures will continue to ensure that defendants receive the information to which they are entitled." ( Johnson , supra , 61 Cal.4th at pp. 719-720, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Significantly, the favorable citation omitted in the passage above is to Gutierrez, one of the cases we rely on today in upholding Pitchess and the Pitchess statutes against real parties' constitutional Brady challenge. ( Johnson , at p. 720, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
As significant as what Johnson decides, however, is what it does not decide: Johnson does not decide and, in fact, the Johnson court does not mention, let alone discuss, *76 the legality under Pitchess of the Department's initial disclosure to the district attorney that the two officers had Brady material in their personnel files. Neither the parties nor the court ever raised that issue. In fact, by the time the prosecutor in Johnson filed her Pitchess motion, the Order had been in place for over three years. ( Johnson, supra , 61 Cal.4th at pp. 706, 724, 206 Cal.Rptr.3d 606, 377 P.3d 847, appen.) *443 Thus, at the time of the Johnson case, the Order was essentially a fait accompli. It is unknowable, from the Johnson opinion, why the legality of the order was not raised in that, or an earlier case. Whatever the reason, Johnson simply does not address the central issue of our case: the statutory legality of a law enforcement agency disclosing to an outside prosecutorial agency, absent a filed, heard, and court-granted Pitchess motion, the fact that a peace officer has founded allegations of misconduct in his or her personnel file and, to the extent such disclosure is illegal under state law, whether it is nevertheless constitutionally compelled by Brady and constitutional due process.
It is true that Johnson comments positively about the procedure created by the San Francisco Police Department: "[i]n this case, the police department has laudably established procedures to streamline the Pitchess / Brady process." ( Johnson, supra , 61 Cal.4th at p. 721, 206 Cal.Rptr.3d 606, 377 P.3d 847.) But such brief comment, in the context of a procedure whose legality is neither directly raised nor expressly addressed in the opinion, is not the same as formal legal approval. " 'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered.' " ( Kinsman v. Unocal Corporation (2005) 37 Cal.4th 659, 680, 36 Cal.Rptr.3d 495, 123 P.3d 931, quoting Chevron U.S.A., Inc. v. Workers' Compensation Appeals Board (1999) 19 Cal.4th 1182, 1195, 81 Cal.Rptr.2d 521, 969 P.2d 613 ; accord People v. Knoller (2007) 41 Cal.4th 139, 154-155, 59 Cal.Rptr.3d 157, 158 P.3d 731.) Put another way, "[a]n appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' " ( Santisas v. Goodin (1998) 17 Cal.4th 599, 620, 71 Cal.Rptr.2d 830, 951 P.2d 399, quoting Childers v. Childers (1946) 74 Cal.App.2d 56, 61, 168 P.2d 218.)
To approve formally the legality of the Department Order in Johnson , our Supreme Court would have had to find that the Department's confidentiality obligations and procedures under sections 832.7 and 832.8 and Evidence Code sections 1043 and 1045, obligations and procedures that were enacted 15 years after Brady , and that had, in the decades since, become "an established part of criminal procedure in this state," Mooc, supra , 26 Cal.4th at page 1226, 114 Cal.Rptr.2d 482, 36 P.3d 21, violate Brady and the Constitution. To do that, the court would have had to find first that Brady creates an affirmative and sua sponte constitutional obligation on the part of law enforcement agencies to disclose, to prosecutors, which of their officers have founded allegations of misconduct relevant to impeachment in their personnel files. Further, the court would have had to overrule, or at least severely restrict the application, in criminal cases, of three of its own precedents: Copley Press, supra , 39 Cal.4th at pages 1297-1299, 48 Cal.Rptr.3d 183, 141 P.3d 288 ; POST , supra , 42 Cal.4th at page 295, 64 Cal.Rptr.3d 661, 165 P.3d 462, and Long Beach, supra , 59 Cal.4th at page 71, 172 Cal.Rptr.3d 56, 325 P.3d 460.
*77 *444 The change effected in California criminal jurisprudence by such a ruling would be significant. It would affect every law enforcement agency in this state and potentially every criminal prosecution with a peace officer witness. It would effectively require every local law enforcement agency in the state, in the absence of any compliance with the Pitchess statutes, to notify the prosecutor whenever one of their peace officers has a founded allegation of misconduct involving moral turpitude in his or her personnel file, so long as that officer is also a potential witness in a pending criminal case.
If this is what the Constitution requires under Brady , then so be it: the Constitution is the supreme law of the land and must be followed. For the reasons stated earlier, however, we do not believe this is required by the Constitution as explicated in Brady . Additionally, we do not believe this type of "sea change" ruling is one our Supreme Court would make implicitly by commenting, without analysis, on a procedure whose legality was never raised by the parties or expressly discussed by the court. Given the other authority cited earlier in this opinion, we find the court's brief description of the Order in Johnson as "laudable" not dispositive in terms of our ruling on the ultimate, and serious, constitutional issue raised in this case. It certainly does not, in our opinion, mandate the significant change in the procedure governing discovery of peace officer personnel records that would be created were we to agree with real parties' position.
The California Attorney General's Opinion, based on Johnson , is likewise not persuasive. In the Opinion, the Attorney General approved the legality of a proposed policy, authored by the California District Attorneys Association, which addressed Brady disclosures from California Highway Patrol (CHP) personnel files. ( 98 Ops.Cal.Atty.Gen. 54 (2015).) Under the proposed policy, a qualified representative of the CHP would examine personnel files and compile a list of officers who had sustained administrative findings of misconduct involving moral turpitude or actual criminal convictions involving moral turpitude. Based upon this list, the CHP would create a secure database identifying the officers, but not the misconduct. Prosecutors would have access to the database and could search it for the names of officers who might testify in their upcoming trials. If an officer witness appeared on the database search, the prosecutor would then file a Pitchess motion and any information released after an in camera review would be disclosed to the defense. ( 98 Ops.Cal.Atty.Gen. at pp. 62-64.)
The CHP objected to this policy, arguing that it could not release to the district attorney the names of officers who were also identified as having sustained allegations of misconduct without violating Pitchess and the Pitchess statutes, an argument fully supported by Copley Press, supra, 39 Cal.4th at pages 1297-1299, 48 Cal.Rptr.3d 183, 141 P.3d 288 ; POST , supra, 42 Cal.4th at page 295, 64 Cal.Rptr.3d 661, 165 P.3d 462 ; and *445 Long Beach, supra, 59 Cal.4th at page 71, 172 Cal.Rptr.3d 56, 325 P.3d 460. The Opinion summarily dismissed this concern with a wholly conclusory, and extremely brief reference to Johnson : "As a general proposition, CHP's argument is undermined by Johnson , which-although it did not spell out the bases for its assumption-plainly and necessarily approved a Brady procedure like this one." ( 98 Ops.Cal.Atty.Gen. at p. 64.) The Opinion did not undertake any analysis of the cases leading up to Johnson , including Gutierrez . Neither did it attempt to explain why our Supreme Court would toss out decades of criminal jurisprudence, thereby effecting a significant change in the way discovery of peace officer personnel *78 records is conducted and which would affect every law enforcement agency and district attorney's office in this state, without any express analysis, and based solely upon an implication from favorable language describing a procedure whose legality was never raised in the litigation.
The Attorney General is authorized to issue advisory opinions to designated state and local officials, and such opinions are entitled to respect. They are however, advisory only, and are not binding on the courts. ( State of California v. Superior Court (1986) 184 Cal.App.3d 394, 396, 229 Cal.Rptr. 74 ; see also Gov. Code, § 12519.) Further, where, as here, an advisory opinion does not discuss relevant precedent or undertake serious legal analysis in the context of the immediate case, it may be disregarded as not persuasive. (See Wenke v. Hitchcock (1972) 6 Cal.3d 746, 752, 100 Cal.Rptr. 290, 493 P.2d 1154.) For the reasons stated above, we find the Opinion to be not persuasive and of little help in the resolution of this case.
Neither Johnson nor the Opinion, therefore, persuades us that our earlier analysis and conclusion prohibiting disclosure of deputy identities from the Brady list, absent a properly filed and granted Pitchess motion and corresponding court order, are incorrect.
B. POBRA
ALADS also opposes any language in the injunction that allows the LASD to transfer, restrict duties of, or in any other similar way affect the job assignment or duties of any deputy on the Brady list.
As mentioned earlier, Government Code section 3300 et seq. is the Public Safety Officers Procedural Bill of Rights Act, otherwise known as POBRA. POBRA grants public safety officers a number of basic procedural rights and protections, which must be followed by the public safety agencies that employ them. Government Code section 3305.5, subdivision (a), prohibits any "punitive action" against or any denial of promotion of any public *446 safety officer solely because that officer has been placed on a " Brady list," or because that officer's name might otherwise be subject to disclosure under Brady.
A " Brady list" is any "system, index, list, or other record containing the names of peace officers whose personnel files are likely to contain evidence of dishonesty or bias, which is maintained by a prosecutorial agency or office in accordance with the holding in Brady v. Maryland (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215." ( Gov. Code, § 3305.5, subd. (e).) "Punitive action" is "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." ( Gov. Code, § 3303.) "Public safety officer" includes any county sheriff's deputy. ( Gov. Code, § 3301 ; Pen Code, § 830.1, subd. (a).) Non-probationary officers must be given an opportunity for administrative appeal of any punitive action. ( Gov. Code, § 3304, subd. (b).) Any public safety officer who believes his or her rights under POBRA have been violated by his or her employing agency may bring an action in the superior court for injunctive relief, a civil penalty not to exceed $25,000 for each violation, and actual damages. ( Gov. Code, § 3309.5, subds. (a), (c), (d), (e).)
Technically speaking, a Brady list, as defined by POBRA, includes only lists maintained "by a prosecutorial agency or office," and does not seem to include similar lists maintained by a law enforcement agency. (See Gov. Code, § 3305.5, subd. (e).) Nevertheless, the protections of Government Code section 3305.5 do apply to the list created by the LASD since *79 Government Code section 3305.5, subdivision (a), prohibits punitive action against any public safety officer on a Brady list, as defined, or against any officer whose "name may otherwise be subject to disclosure pursuant to [ Brady ]." If an officer appears on a Brady list created by a law enforcement, rather than prosecutorial agency, he or she certainly "may otherwise be subject to disclosure pursuant to [ Brady ]." ( Gov. Code, § 3305.5, subd. (a).)
None of the acts proposed by real parties that may result from a deputy's placement on the LASD's Brady list involve "dismissal, demotion, suspension, reduction in salary, [or] written reprimand." ( Gov. Code, § 3303.) Indeed, Captain Nelson's declaration establishes that any response by the LASD will not involve changes in rank, salary, or even bonus pay. The only possible action suggested by Captain Nelson's declaration or the October 14, 2016 letter described in Government Code section 3303 is the possibility of transfer.
A transfer must be punitive in nature before it violates POBRA. ( Gov. Code, § 3303.) A transfer is not inherently disciplinary or disadvantageous to the officer, and is punitive only when it is "for purposes of punishment."
*447 ( White v. County of Sacramento, supra , 31 Cal.3d at pp. 682-683, 183 Cal.Rptr. 520, 646 P.2d 191 ; see also Gov. Code, § 3303.) Furthermore, a transfer is not punitive solely because it seeks to address the officer's deficient performance in a current assignment. An agency may have many reasons, quite apart from punishment, for transferring an employee who is not performing at a satisfactory level in his or her particular assignment: there is a difference between a transfer to punish deficient performance and a transfer to compensate for the deficient performance. ( Los Angeles Police Protective League v. City of Los Angeles, supra , 232 Cal.App.4th at p. 142, 181 Cal.Rptr.3d 204.) Mere reassignment or removal from collateral duties absent a reduction in salary or rank do not amount to punitive action. ( Perez v. City of Westminster, supra , 5 Cal.App.5th at pp. 364-365, 209 Cal.Rptr.3d 504.) Before an officer is entitled to an administrative appeal of an alleged punitive transfer, he or she must present some evidence that the agency's conduct was indeed for purposes of punishment and not for some other, valid, reason. The focus must be on what the agency actually intended, not on what the officer believes the agency's intention to be. ( Los Angeles Police Protective League v. City of Los Angeles, at pp. 141-142, 181 Cal.Rptr.3d 204.)
On this issue, we agree with the trial court that ALADS did not demonstrate a likelihood of success on the merits. The record below shows that ALADS failed to rebut real parties' evidence that any transfer or other change in duties based upon a deputy's placement on the LASD Brady list would be to address, or compensate for, the deputy's reduced credibility due to potential disclosure of the deputy's past founded allegations of misconduct. Such a transfer is not "for purposes of punishment." Moreover, as the trial court observed, any individual deputy in the future who believes his transfer is, in fact, punitive, still retains the procedural protections of POBRA and may assert them if he or she feels it is necessary.
To the extent ALADS argues that this portion of the injunction grants affirmative relief to real parties that they neither requested nor properly noticed, we reiterate our comments made in the discussion of the LASD's creation and maintenance of a wholly internal Brady list in part III.A.1, ante . Considered as a whole, and in context, the language merely limits what the immediate injunction prohibits. It does not affirmatively compel or even authorize the *80 LASD or any other real party to make transfers or impose restrictions of duty. It simply establishes that the immediate injunction, in and of itself, does not prohibit such acts.
C. Non-sworn Employees
The final paragraph of the trial court's injunction states that "[r]espondents are not enjoined from disclosing any future developed 'Brady List' to the Los Angeles County District Attorney's Office, or any other prosecutorial agency, *448 provided any new Brady List contains only the names of non-sworn employees who are not subject to the Public Safety Officers' Procedural Bill of Rights Act ('POBRA'), Government Code section 3300, et seq."
As ALADS points out, the non-sworn employees of the LASD are not parties to, and are therefore not represented in, this litigation. The issue of a Brady list for non-sworn LASD employees is not raised by ALADS' petition and complaint, and, as far as we can see, was never raised by the parties either in their pleadings, motions, or other documents filed in the trial court, or during oral argument before the trial court. It appears to be completely beyond the scope of the issues fairly raised by the litigation up to this point, and thus beyond the scope of the trial court's injunctive authority in the context of the immediate case. Whatever the legality, or illegality, of a Brady list disclosure of non-sworn employees, that issue must wait for a lawsuit in which it is fairly raised, noticed, and litigated. That lawsuit is not the immediate case.
DISPOSITION
While we agree with the trial court that injunctive relief is proper in this case, for the foregoing reasons we disagree with its analysis of the constitutional question presented and thus with the limited scope of the injunction ordered. The petition for writ of mandate is granted, in part. The trial court's order of preliminary injunction as worded, must be modified so that it is consistent with this opinion.
The trial court is ordered to strike from the injunction any language that allows real parties or any of them to disclose the identity of any individual deputy on the LASD's Brady list to any individual or entity outside the LASD, even if the deputy is a witness in a pending criminal prosecution, absent a properly filed, heard, and granted Pitchess motion, accompanied by a corresponding court order. The court must also strike any language that purports to address real parties' power or authority with respect to a Brady list involving non-sworn employees.
In all other respects, the petition is denied.
I CONCUR:
BIGELOW, P.J.

Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

All subsequent statutory references are to the Penal Code, unless otherwise designated.

The concurring and dissenting opinion in this case (hereinafter "dissent") contends that we have mischaracterized the trial court's ruling and created a constitutional issue where none exists. The dissent asserts that the trial court "harmonized" Brady and Pitchess rather than found them in contradiction. (Conc. & dis. opn. post, at pp. 81-82.) We disagree.
In its written tentative ruling, after reviewing Copley Press , POST , and Long Beach, the trial court summarized its conclusion: "The clear import of Copley Press , POST , and Long Beach is that the names of peace officers are confidential and not subject to disclosure absent a Pitchess motion when connected or linked with employee discipline and investigation of complaints concerning an employee." Later in the tentative, the court reiterated this position, but added its conclusion regarding the obligation created by Brady : "Petitioner is correct that the names of peace officers are confidential and not subject to disclosure absent a Pitchess motion when connected or linked with the officers' discipline under Copley Press , POST, and Long Beach. [Citation.] These names cannot be disclosed to the District Attorney absent a Brady obligation to do so."
Thus, in its tentative, the trial court expressly acknowledged that disclosing the identity of a deputy from the Brady list to the district attorney in the absence of a litigated and granted Pitchess motion violates the Pitchess statutes. Nevertheless, the court then approved of that disclosure, and hence the Pitchess violation it creates, so long as the Brady obligation has been triggered by a filed prosecution involving a deputy from the list as a witness. As mentioned above, this is no different from saying the Pitchess procedures that prohibit identifying a deputy connected to a disciplinary investigation are unconstitutional and therefore must be ignored when a Brady list deputy is a potential witness in a filed prosecution. Thus, we believe that the constitutional issue addressed in this opinion is squarely before us.

United States Department of Justice, Office of Justice Programs, Bureau of Justice Statistics, Census of State and Local Law Enforcement Agencies, 2008 (July 26, 2011) No. NJC 233982, page 15, appendix table 6 (< https://www.bjs.gov/content/pub/pdf/csllea08.pdf>[as of July 11, 2017].)