Filed 10/30/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MANUEL SERRANO, | B282975 |
| Petitioner, | (Los Angeles County Super. Ct. No. PA087902) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate.
Hilleri G. Merritt, Judge.  Petition granted.

Kelly Emling, Acting Public Defender, Albert J. Menaster, Mark G. Harvis and Rebecca L. Barnhart, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Fuentes & McNally, Raymond J. Fuentes and Sofia Sarin for Real Parties in Interest.

_____

Defendant Manuel Serrano, charged with the sale and transportation of a controlled substance, moved for in camera review and pretrial disclosure of potential impeachment material the district attorney informed him is contained in the personnel file of the arresting deputy, who is expected to testify at Serrano's trial. The superior court denied the motion. Serrano petitioned for writ of mandate. We grant the petition and direct the superior court to vacate its order denying Serrano's motion and enter a new and different order granting the motion.

### FACTUAL AND PROCEDURAL SUMMARY

### A. Serrano's Detention and Arrest

Los Angeles County Sheriff's Deputy Adam Halloran was driving his marked patrol vehicle northbound on Interstate 5 when he spotted a Jeep in the number 2 lane, hugging the left side of the lane.[1] When the Jeep passed a semitrailer, the rear tire crossed over the line into the next lane (an alleged violation of Veh. Code, § 21658, subd. (a)). After the Jeep crossed over the line into the next lane a second time, Halloran performed a traffic stop. Halloran identified the Jeep's driver as Serrano and the sole passenger as Serrano's cousin, Homar Romero.

Halloran asserts in his report that he immediately noticed Serrano appeared extremely nervous. Serrano was breathing rapidly, and his hands trembled as he fumbled through his vehicle paperwork. Halloran also noticed a FoodSaver box, which his training taught him is used to vacuum seal narcotics. Halloran informed Serrano of the reason for the stop and asked if he had been drinking. Serrano replied that he had not.

---

[1] This account does not represent adjudicated facts; rather, it is drawn from Deputy Halloran's December 14, 2016 incident report, setting forth allegations against Serrano to which Halloran could testify.

2

Halloran instructed Serrano to exit his vehicle and asked where he had been coming from. Serrano said he had dropped off his grandmother at his aunt's house but was unable to remember the name of the city where she lives. According to Halloran, Serrano was squinting and his nervousness increased. When asked how long he had been in Los Angeles, Serrano did not respond directly and instead stated that he left Fresno at 4:00 a.m. Halloran observed that Serrano was so nervous that his voice began to crack, at which point Serrano, apparently conscious of his nervous behavior, volunteered that he had just consumed an energy drink.

Halloran concluded that while none of these behaviors individually would indicate criminal activity, taken together and considered in light of his law enforcement training and experience, they led him to be "extremely suspicious that a crime was occurring beyond a basic traffic violation." Serrano denied that there were any drugs or guns in the vehicle and refused Halloran's request for permission to search the vehicle. Halloran placed Serrano in the backseat of his patrol car and radioed for a K-9 unit. Up to that point Halloran had been operating alone, but soon was joined by passing California Highway Patrol Officer Smithson, who remained on the scene for officer safety.

When the K-9 unit arrived, the drug-sniffing dog alerted on the car, and in particular on the FoodSaver box in the back. Upon inspection, Halloran found the box contained a vacuum sealer and plastic bags, but no narcotics. Halloran then found a wrapped Christmas present in the backseat, which had a shape, feel, and weight consistent with bulk narcotics packaging of about one kilogram. Halloran unwrapped the present and found approximately 2.5 pounds of what appeared to be cocaine wrapped in foil and FoodSaver plastic material. Halloran also seized two cell phones as evidence consistent with drug dealing.

After advising Serrano of his *Miranda* rights,[2] Halloran told him he had found drugs and asked Serrano if Romero was "in on it." Serrano replied, "Nah." Halloran said, "It's just you then?" Serrano nodded. Halloran asked Serrano, "You are saying the drugs do not belong to him (pointing to [Romero]), they belong to you?" Serrano replied, "Yes." Halloran released Romero at the scene and arrested Serrano and transported him to the Santa Clarita station for booking.

**B.  Serrano's *Pitchess* Motion Seeking *Brady* Material[3]**

On April 17, 2017, the People filed an information charging Serrano with one count of sale and transportation of a controlled substance, cocaine, in violation of Health and Safety Code section 11352, subdivision (a). On the same day, a deputy district attorney informed Serrano's appointed public defender that she should file a discovery motion, and that by so recommending he believed he was fulfilling his obligations under *Brady*, *supra*, 373 U.S. 83. The deputy district attorney explained he had learned from the office's online database of recurring witnesses that Deputy Halloran's personnel file contains potential *Brady* material, although the entry did not disclose the nature of the material.

On April 24, 2017, Serrano's public defender filed a motion for pretrial discovery, requesting the presentation to the court of all potentially relevant documents in Halloran's personnel file for the court's in camera review. Based on *People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696 (*Johnson*), Serrano asserted the defense is not required to allege officer wrongdoing in order to

---

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436.

[3]  *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

4

obtain discovery. Instead, Serrano argued the defense need only aver that there is *Brady* material in the officer's personnel file and explain how the officer's credibility is relevant to the case. Thus, in her declaration accompanying Serrano's motion, the public defender stated: "The credibility of the arresting deputy is material to both a motion to suppress evidence and to trial. He is the arresting officer and the sole witness for the prosecution on all issues related to the stop of my client, including his observations of my client's driving; my client's demeanor; what was observed in my client's vehicle; what was found in that vehicle; and any statements made by my client." The declaration further asserted that, "[d]epending on the type of *Brady* evidence in this officer's personnel file, it may be used to impeach this officer's testimony and credibility at any hearing or trial."

Real parties in interest Los Angeles County Sheriff's Department (LASD) and Deputy Halloran (sometimes collectively LASD) opposed Serrano's motion chiefly on the ground that counsel's declaration did not establish "good cause and materiality for the production of the requested documents." LASD argued that under *Pitchess*, *supra*, 11 Cal.3d 531, and its progeny, "the defense must allege . . . that the officer in question did something wrong," "must further show that this allegation of officer misconduct is 'plausible,' i.e., one that 'might or could have occurred,' " and "the discovery sought must support a theory of the defense that is logically related to the pending charges."

**C. Superior Court's Hearing on Serrano's Motion**

At the May 17, 2017 hearing, the public defender characterized Serrano's motion as based on *Brady* and *Johnson*, with *Pitchess* being "merely the mechanism to conduct the in camera review of protected police information." This, she argued, distinguished it from a "pure" *Pitchess* motion because Serrano

5

was not alleging "particular officer misconduct such as to trigger an in camera review for dishonesty or excessive force."

LASD argued that the defense must follow *Pitchess* and Evidence Code section "1043 and show good cause and materiality by declaration and misconduct by the Deputy." The public defender conceded Serrano must show "good cause," but, quoting *Johnson, supra,* 61 Cal.4th at page 720, argued that "the burden is not high. 'Good cause for discovery exists when the defendant shows both " 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." ' "

The trial court concluded that a *Pitchess* motion requires "defense counsel to state upon information and belief, or any fashion in a declaration how Deputy Halloran engaged in acts of misconduct in this case." Because Serrano failed to allege officer misconduct, the court denied the motion without prejudice.

### D. Serrano's Petition for Writ of Mandate

On June 7, 2017, Serrano filed a petition for writ of mandate, directing the respondent court to vacate and set aside its ruling denying his motion. Serrano contends the trial court erred by denying his motion on the ground that he failed to allege that Deputy Halloran engaged in acts of misconduct. Serrano asserts that his counsel's declaration, which showed that Deputy Halloran's credibility would be material to both a motion to suppress evidence and at trial, was sufficient to trigger in camera review of the officer's personnel file. Serrano chiefly relies on the statement in *Johnson* that when the defense has been notified that an officer's personnel file contains potential *Brady* material, "[a] defendant's providing of that information to the court, together with some explanation of how the officer's credibility might be relevant to the proceeding, would satisfy the showing

6

necessary under the *Pitchess* procedures to trigger in camera review." (*Johnson*, *supra*, 61 Cal.4th at p. 721.)

We requested opposition. LASD contends that under *Warrick v. Superior Court* (2005) 35 Cal.4th 1011 (*Warrick*) Serrano was required to allege specific misconduct committed by Deputy Halloran in this case and show how evidence of instances of misconduct in Halloran's personnel file would support Serrano's defense to the charges. On August 2, 2017, we ordered the superior court to show cause why a peremptory writ should not issue, directing the court to vacate its May 17, 2017 order denying Serrano's motion and to issue a new and different order granting the motion.

## DISCUSSION

Generally, we review a superior court's decision on the discoverability of material in police personnel files under an abuse of discretion standard. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220–1221.) But when, as here, the trial court's ruling is premised on an asserted misinterpretation of a legal principle or statute, we review such legal questions de novo. (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 390–391.)

### I. The Prosecution Team's *Brady* Obligations

In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady*, *supra*, 373 U.S. at p. 87.) The high court has "since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, [citation], and that the duty encompasses impeachment evidence as well as exculpatory evidence, [citation]. Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

7

the proceeding would have been different.' " (*Strickler v. Greene* (1999) 527 U.S. 263, 280.) "Moreover, the rule encompasses evidence 'known only to police investigators and not to the prosecutor.' [Citation.] In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.' " (*Id.* at pp. 280–281.) "The obligation under *Brady* . . . is the obligation of the government, not merely the obligation of the prosecutor." (*U.S. v. Blanco* (9th Cir. 2004) 392 F.3d 382, 393.) Accordingly, " '[e]xculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does.' " (*Id.* at pp. 393–394.)

## II. Statutory *Pitchess* Motion Procedures

Our Supreme Court's decision in *Pitchess* "established that a criminal defendant could 'compel discovery' of certain relevant information in the personnel files of police officers by making 'general allegations which establish some cause for discovery' of that information and by showing how it would support a defense to the charge against him." (*Warrick*, *supra*, 35 Cal.4th at pp. 1018–1019.) "In 1978, the California Legislature codified the holding of *Pitchess* by enacting Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045. [Citations.] To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue. [Citation.] This two-part showing of good cause is a 'relatively low threshold for discovery.' " (*Warrick*, at p. 1019.) "If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only

that information falling within the statutorily defined standards of relevance." (*Ibid*.)  Absent compliance with these procedures, peace officer personnel records "are confidential and shall not be disclosed in any criminal or civil proceeding."  (Pen. Code, § 832.7, subd. (a).)

### III.  The Use of *Pitchess* Motion Procedures to Obtain *Brady* Material

The *Pitchess* procedure " 'operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information.' "  (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 14.) Accordingly, "all information that the trial court finds to be exculpatory and material under *Brady* must be disclosed, notwithstanding Evidence Code section 1045's [bar on disclosure of records more than five years old]."  (*Johnson*, *supra*, 61 Cal.4th at p. 720.)

"Although both *Brady* [citation] and its progeny, and the statutory *Pitchess* procedures employ the terms 'material' or 'materiality' in describing what must be disclosed, these words are not used in the same way.  Under *Brady*, evidence is 'material' only if it is reasonably probable a prosecution's outcome would have been different had the evidence been disclosed. [Citation.]  By contrast, '[u]nder *Pitchess*, a defendant need only show that the information sought is material "to the subject matter involved in the pending litigation."  [Citation.]  Because *Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements, any [information] that meets *Brady*'s test of materiality necessarily meets the relevance standard for disclosure under *Pitchess*.  [Citation.]' [Citation.]  [¶]  'This procedural mechanism for criminal defense discovery, which must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the

defendant's right to a fair trial [citations], is now an established part of criminal procedure in this state.'" (*Johnson, supra*, 61 Cal.4th at pp. 711–712.)

## IV. LASD's "*Brady* List" of Deputies Whose Personnel Files Contain Founded Allegations of Misconduct

In October 2016, an LASD panel concluded its review of deputy personnel files and "identified approximately 300 individual deputies who had administratively founded allegations of misconduct involving moral turpitude, conduct which might be used to impeach the deputy's testimony in a criminal prosecution." (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2017) 13 Cal.App.5th 413, 423, review granted Oct. 11, 2017, S243855 (*ALADS*).) The 11 "categories of misconduct upon which the panel based its decisions were administratively founded violations of various sections of the Sheriff's Manual of Policy and Procedures."[4] (*Ibid*.)

In November 2016, the Association for Los Angeles Deputy Sheriffs, the union representing LASD's nonsupervisory deputies, filed an action seeking to enjoin LASD's compilation of the "*Brady* list" and LASD's dissemination of the list to prosecutors,

---

[4] The 11 categories are listed in *ALADS* as follows: "(1) immoral conduct (§ 3-01/030.07), (2) bribes, rewards, loans, gifts, favors (§ 3-01/030.75), (3) misappropriation of property (§ 3-01/040.40), (4) tampering with evidence (§ 3-01/040.65), (5) false statements (§ 3-01/040.70), (6) failure to make statements and/or making false statements during departmental internal investigations (§ 3-01/040.75), (7) obstructing an investigation/influencing a witness (§ 3-01/040.76), (8) false information in records (§ 3-01/100.35), (9) policy of equality— discriminatory harassment (§ 3-01/121.20), (10) unreasonable force (§ 3-01/030.10), and (11) family violence (§ 3-01/030.16)." (*ALADS, supra*, 13 Cal.App.5th at p. 423, review granted.)

alleging that the practice violated the confidentiality protections of the *Pitchess* statutes. (*ALADS*, *supra*, 13 Cal.App.5th at pp. 424−425, review granted.) The trial court preliminarily enjoined LASD from "disclosing the identity of any individual deputy on the *Brady* list to any party outside the LASD, except a relevant prosecutorial agency, and then only if the deputy is a potential witness in a pending criminal prosecution." (*Id*. at p. 428.)

In February 2017, the union filed a petition for writ of mandate, seeking an immediate stay and reversal of that part of the trial court's preliminary injunction that permitted LASD to compile the *Brady* list and to inform prosecutors when individual deputies on the list are potential witnesses in a pending criminal prosecution. (*ALADS*, *supra*, 13 Cal.App.5th at pp. 428−429, review granted.) On February 15, 2017, the Court of Appeal issued a stay and ordered the trial court to show cause why the union should not be granted the relief it sought. (*Id*. at p. 429.) On July 11, 2017, the majority ruled: "The language in the injunction that allows the LASD, or any real party, to disclose the identity of any individual deputy on the *Brady* list to any agency or individual outside the LASD, absent a properly filed and granted *Pitchess* motion and corresponding court order, even if the affected deputy is a potential witness in a filed criminal prosecution, must be stricken." (*Id*. at p. 439 (maj. opn. of Sortino, J.,[5] Bigelow, P. J., conc.); but see *id*. at pp. 448–458 (conc. & dis. opn. of Grimes, J.).) The majority reasoned that because the *Pitchess* statutes broadly protect the confidentiality of all information contained in personnel records, "the identity of

---

[5] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

a peace officer that is derived from his or her personnel file, to the extent it connects that officer to administrative disciplinary proceedings or complaints of misconduct also contained within the protected personnel file, may not be disclosed absent compliance with the *Pitchess* procedures." (*ALADS*, *supra*, 13 Cal.App.5th at p. 433 (maj. opn.), review granted.)

In her dissent, Justice Grimes disagreed with the majority that a series of cases involving claims by media organizations under the California Public Records Act (Gov. Code, § 6250 et seq.) for release of information from officers' personnel files to the general public applied in the *Brady* context. (*ALADS*, *supra*, 13 Cal.App.5th 413 at pp. 451−452 (conc. & dis. opn. of Grimes, J.), review granted.) "The disclosure the trial court permitted . . . is entirely different from the disclosure prohibited in [the media cases]. As we have seen, the disclosure is from a law enforcement member of the prosecution team to the prosecutor in a pending criminal proceeding, not a disclosure to the general public." (*Id.* at p. 453.) Justice Grimes expressed concern that the practical effect of the majority's decision was to require prosecutors to file *Pitchess* motions in every case, yet prosecutors would be unable to make the " 'good cause' " showing necessary to trigger an in camera review without having foreknowledge that the deputy's personnel file contains *Brady* material. (*Id.* at p. 454.)

Upon granting LASD's petition for review, the California Supreme Court instructed the parties to "brief the following issue: When a law enforcement agency creates an internal *Brady* list (see Gov. Code, § 3305.5), and a peace officer on that list is a potential witness in a pending criminal prosecution, may the agency disclose to the prosecution (a) the name and identifying number of the officer and (b) that the officer may have relevant exonerating or impeaching material in his or her confidential personnel file, or can such disclosure be made only by court order

12

on a properly filed *Pitchess* motion?  (See *Brady*[, *supra*, 373 U.S. 83; *Johnson*, *supra*, 61 Cal.4th 696; *Pitchess*, *supra*,] 11 Cal.3d 531; Pen. Code, §§ 832.7−832.8; Evid. Code, §§ 1043−1045.)" (*Association for Los Angeles Deputy Sheriffs v. Superior Court*, S243855, Supreme Ct. Mins., Oct. 11, 2017.)  Our high court's decision in *ALADS* will not affect this case because Serrano has already been informed there is potential *Brady* material in Deputy Halloran's personnel file, but it will determine how often the issue we address here arises in the future.

## V.  Obtaining *Brady* Material Known to Exist in a Peace Officer's Personnel File

### A.  Serrano's showing was sufficient under *Johnson*

Serrano and LASD agree that this case is governed by our Supreme Court's decision in *Johnson, supra*, 61 Cal.4th 696.  In *Johnson*, as occurred here, the prosecution informed the defendant that the arresting officers' personnel files contained potential *Brady* material.  Our Supreme Court granted review to determine how disclosure of such *Brady* material could be obtained and by whom.

In *Johnson*, the San Francisco Police Department informed the district attorney that the confidential personnel records of two peace officers who were potential witnesses in the case might contain exculpatory information.  (*Johnson, supra*, 61 Cal.4th at p. 705.)  The prosecution filed a *Pitchess* motion under Evidence Code sections 1043 and 1045, seeking the trial court's in camera review of the officers' personnel files for exculpatory material under *Brady* and disclosure of that material to the prosecution and the defense.  (*Johnson, supra*, 61 Cal.4th at p. 706.)

The motion was supported by a declaration of the prosecutor, which "stated that, based on police department representations that the files contained potential *Brady* material,

13

she believed the officers' personnel files contain 'sustained allegations of <u>specific *Brady* misconduct</u>, reflective of dishonesty, bias, or evidence of moral turpitude. I believe on these case facts, and given the officers' roles, that such misconduct would be constitutionally material to the instant case in the *Brady* sense.' The declaration further stated that the records 'are material to the pending litigation in that they pertain to the credibility of a necessary and material prosecution witness, and could either impeach said witness or lead to evidence exonerating the defendant.' " (*Johnson*, *supra*, 61 Cal.4th at p. 706.)

In response, the defense filed its own motion, asking "the court to (1) conduct the requested review, (2) declare Penal Code section 832.7 (which limits review of peace officer personnel records) unconstitutional and order the police department to allow the prosecutor to review the officer personnel files for *Brady* material, or (3) dismiss the case due to the prosecutor's failure to comply with *Brady*." (*Johnson*, *supra*, 61 Cal.4th at pp. 707−708.) Defense counsel "stated his belief that he could not himself obtain disclosure of the material in the personnel files because he 'knows only that those files contain potential *Brady* material, but [he] cannot move for it specifically because . . . he does not know what it is, or how it might impact his defense.' " (*Id.* at p. 708.)

The superior court "issued an order concluding that the prosecution had not made a sufficient showing to warrant court review of the records, that the *Pitchess* motion procedures did not apply to motions seeking review of peace officer personnel records under *Brady*, and that Penal Code section 832.7 is unconstitutional to the extent it bars the prosecution from gaining access to officer personnel records in order to comply with *Brady*. The court denied the prosecution's motion for in camera *Brady* review, and ordered the police department 'to give the

14

District Attorney access to the personnel files of [the officers] "so the prosecution can comply with its *Brady* mandate." ' The order stated, 'Once the District Attorney has reviewed the personnel records, he will be able to fulfill his constitutional obligation to disclose to the Public Defender any information that is material under *Brady*.' " (*Johnson*, *supra*, 61 Cal.4th at p. 708.)

The district attorney and the police department filed separate petitions for writ of mandate and/or prohibition in the Court of Appeal, challenging the superior court's order. The Court of Appeal "held that, to satisfy its constitutional duty, the prosecution may and, before the court becomes involved, should itself review the personnel files of peace officer witnesses for *Brady* material. It directed the superior court to modify its . . . order 'to provide that, if the San Francisco District Attorney identifies any evidence in the San Francisco Police Department personnel files for [the officers] that should be disclosed to [the] defendant . . . under *Brady* [citation], the District Attorney shall file a motion under Evidence Code section 1043 to obtain such disclosure.' " (*Johnson*, *supra*, 61 Cal.4th at pp. 708–709.)

The California Supreme Court granted review and "requested the parties to brief the question of whether 'the prosecution's obligation under *Brady* [citation] and its progeny [would] be satisfied if it simply informs the defense of what the police department has informed it (that the two officers' personnel files might contain *Brady* material), which would allow the defense to decide for itself whether to seek discovery of that material pursuant to statutory procedures.' " (*Johnson*, *supra*, 61 Cal.4th at p. 709.)

The Supreme Court reversed the Court of Appeal, concluding that police personnel records are confidential even vis-à-vis the prosecution, and therefore "prosecutors, as well as defendants, must comply with the *Pitchess* procedures if they

seek information from confidential personnel records." (*Johnson*, *supra*, 61 Cal.4th at p. 714.) The Supreme Court concluded: "Because criminal defendants and the prosecution have equal ability to seek information in confidential personnel records, and because such defendants, who can represent their own interests at least as well as the prosecution and probably better, have the right to make a *Pitchess* motion whether or not the prosecution does so, we also conclude that the prosecution fulfills its *Brady* duty as regards the police department's tip if it provides the defense the information it received from the police department, namely, that the specified records might contain exculpatory information. That way, defendants may decide for themselves whether to bring a *Pitchess* motion. The information the police department has provided, together with some explanation of how the officers' credibility might be relevant to the case, would satisfy the threshold showing a defendant must make in order to trigger judicial review of the records under the *Pitchess* procedures." (*Johnson*, at pp. 705−706.)

LASD relies on statements in *Johnson* mandating compliance with *Pitchess* procedures, but overlooks that *Johnson* addressed two distinct situations. First, the court reviewed the threshold showing courts have required a defendant to make when counsel merely suspects there may be material evidence in an officer's personnel file. Addressing the concern that the showing required by *Pitchess* was "too high . . . to obtain exculpatory material from personnel records" (*Johnson*, *supra*, 61 Cal.4th at p. 720), the court stated that "a defendant must show good cause, but the burden is not high. 'Good cause for discovery exists when the defendant shows both " 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." (*City of Santa Cruz v. Municipal Court* [(1989)] 49 Cal.3d 74, 84.) A

16

showing of good cause is measured by "relatively relaxed standards" that serve to "insure the production" for trial court review of "all potentially relevant documents." (*Ibid.*)' (*People v. Gaines* (2009) 46 Cal.4th 172, 179.) The defense only needs to demonstrate ' "a logical link between the defense proposed and the pending charge" and describe with some specificity "how the discovery being sought would support such a defense or how it would impeach the officer's version of events." ' (*Id.* at p. 182, *quoting Warrick v. Superior Court*[, *supra*,] 35 Cal.4th 1011, 1021; *see Warrick*, at pp. 1024–1025 [the defense proposed may, 'depending on the circumstances of the case, . . . consist of a denial of the facts asserted in the police report'].) 'This specificity requirement excludes requests for officer information that are irrelevant to the pending charges.' (*Warrick*, at p. 1021.) But if the defendant shows that the request *is* relevant to the pending charges, and explains how, the materiality requirement will be met." (*Johnson*, *supra*, 61 Cal.4th at pp. 720−721.)

The three cases *Johnson* cites for these well-established standards—*City of Santa Cruz*, *Gaines*, and *Warrick*—involved pure *Pitchess* motions. In none of them had the prosecution notified the defendant that the officer's personnel file contained potential *Brady* material. Thus, these cases addressed a defendant's right to conduct statutory criminal discovery under *Pitchess*, rather than a defendant's use of the *Pitchess* motion procedures to access potential *Brady* material known to be contained in an officer's personnel file.

After describing the threshold showing usually required to trigger in camera review under *Pitchess*, *Johnson* separately addressed what was required of the defendant, Daryl Johnson, who *had* been notified of the existence of *Brady* material in the officers' personnel files: "In this case, the police department has laudably established procedures to streamline the *Pitchess*/*Brady*

17

process. It notified the prosecution, which in turn notified the defendant, that the officers' personnel records might contain *Brady* material. A defendant's providing of that information to the court, together with some explanation of how the officer's credibility might be relevant to the proceeding, would satisfy the showing necessary under the *Pitchess* procedures to trigger in camera review." (*Johnson*, *supra*, 61 Cal.4th at p. 721.)

Serrano did just that. His motion for pretrial discovery was supported by his counsel's declaration stating that the prosecutor advised her to file a motion because Deputy Halloran's personnel file contains potential *Brady* material. Counsel's declaration explained that Halloran was the "sole witness for the prosecution on all issues related to the stop of my client, including his observations of my client's driving; my client's demeanor; what was observed in my client's vehicle; what was found in the vehicle; and any statements made by my client." Thus, counsel asserted, Halloran's credibility "is material to both a motion to suppress evidence and to trial," and "[d]epending on the type of *Brady* evidence in [his] personnel file, it may be used to impeach [his] testimony and credibility at any hearing or trial." Under *Johnson*, counsel's declaration was sufficient to trigger in camera review of Halloran's personnel file, and it was error for the superior court to deny Serrano's motion on the ground that he failed to allege specific officer misconduct.

## B. *Warrick* does not apply where *Brady* material is known to exist in an officer's personnel file

LASD reads our Supreme Court's earlier decision in *Warrick* to require a showing of officer misconduct, apparently in every case. Relying on *Warrick*, LASD argues that Serrano has not established "good cause" for disclosure because he "fails to allege how the deputy's credibility is material if the defense does

18

not allege that the deputy lied in any manner." In support, LASD points to the following statement in *Warrick*: "This court has long required that the information sought must be described with some specificity to ensure that the defendant's request is not so broad as to garner ' "all information which has been obtained by the People in their investigation of the crime" ' but is limited to instances of officer misconduct related to the misconduct asserted by the defendant." (*Warrick, supra*, 35 Cal.4th at p. 1021.)

In *Warrick*, the defendant alleged that arresting officers fabricated a report stating he scattered rock cocaine as he fled from them. (*Warrick, supra*, 35 Cal.4th at p. 1016.) The defendant claimed the drugs were discarded by a nearby drug dealer from whom he had planned to buy rock cocaine for his own use, and he ran from the police because he was on parole. (*Id.* at p. 1017.) The Court of Appeal held that the defendant had not made an adequate threshold showing to obtain in camera review under *Pitchess* because the "specific factual scenario of police misconduct" lacked a " ' "plausible factual foundation." ' " (*Id.* at p. 1018.)

Our Supreme Court held the defendant's factual scenario was sufficient to establish "good cause for *Pitchess* discovery, entitling him to the trial court's in-chambers review of the arresting officers' personnel records relating to making false arrests, planting evidence, fabricating police reports or probable cause, and committing perjury." (*Warrick, supra*, 35 Cal.4th at p. 1027.) The court explained that a trial court may assess whether a defendant has established "the materiality of the requested information to the pending litigation[ by inquiring:] Has the defense shown a logical connection between the charges and the proposed defense? Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct? Will the requested *Pitchess* discovery support

19

the proposed defense, or is it likely to lead to information that would support the proposed defense?  Under what theory would the requested information be admissible at trial?"  (*Id.* at pp. 1026–1027.)

We are not persuaded that *Warrick* applies here.  The defendant in *Warrick had* alleged officer misconduct and filed a pure *Pitchess* motion to discover any evidence in the arresting officers' files showing they falsified police reports in other cases.  The issue before the court was whether the defendant's allegations of officer misconduct were sufficiently specific and plausible to trigger criminal discovery.  Of importance, the defendant in *Warrick* had not requested *Brady* material, nor had he been informed that potential *Brady* material was known to exist in the arresting officers' personnel files, as is the case here.

*Warrick* did not hold that every *Pitchess* motion must allege officer misconduct.  Nor could it.  As *Johnson* later explained, the "prosecution and the defense have *equal access* to confidential personnel records of police officers who are witnesses in a criminal case.  Either party may file a *Pitchess* motion, and either party must comply with the statutory procedures to obtain information in those records."  (*Johnson*, *supra*, 61 Cal.4th at p. 716, italics added.)  It would be nonsensical to require the prosecution to allege that an officer, who is part of the prosecution team and an intended witness, engaged in specific acts of misconduct.  And requiring a defendant—but not the prosecution—to allege misconduct would defeat *Johnson*'s premise that defendants and prosecutors have "equal access" to potential *Brady* material in an officer's personnel file.

The requirement of identifying specific officer misconduct may serve to limit fishing expeditions in cases where there is no indication that the officer's personnel file contains *Brady* material or other relevant evidence.  The requirement also makes

20

sense in cases where a defendant, or a plaintiff in a civil rights case, is seeking evidence of a particular type of misconduct, such as the use of excessive force. In such cases, specifically alleging the misconduct at issue would help the trial court identify relevant evidence during its in camera review of the officer's personnel file and also would help the custodian of records identify what material is potentially relevant and should be presented to the court for its review. But when the officer's personnel file is known to contain potential *Brady* material, the defendant cannot be required to allege that the officer engaged in misconduct.

Serrano is not required to testify at trial, or even to put on a defense, and has the right to defend himself simply by testing the prosecution's case. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1296, fn. 31 [" 'the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove beyond a reasonable doubt every essential element of the charge against him,' " quoting CALJIC No. 2.61].) Accordingly, Serrano may elect to impeach Halloran's credibility without alleging any specific officer misconduct or factual account that contradicts Halloran's testimony.

### C. The United States Supreme Court has held that no particularized showing is required to trigger in camera review for *Brady* material in other confidential files

Requiring a defendant to allege officer misconduct to trigger a court's in camera review of potential *Brady* material known to exist in an officer's personnel file also would be contrary to how the high court has applied *Brady* in like situations. In *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 (*Ritchie*), the high court considered the scope of the government's obligation to disclose impeachment materials contained in confidential agency

21

files protected from disclosure by a state statute. The defendant had been denied access to material in the Children and Youth Services (CYS) file of his minor daughter, whom he was convicted of molesting. The Pennsylvania Supreme Court held that defense counsel must be allowed to examine the confidential information. The United States Supreme Court granted certiorari and analyzed the issue under the due process framework of *Brady* and its progeny.

Because the Pennsylvania statute protecting CYS files permitted disclosure by court order, the court could not "conclude that the statute prevents all disclosure in criminal prosecutions." (*Ritchie*, *supra*, 480 U.S. at p. 58.) Instead, "relevant information" could be disclosed "when a court of competent jurisdiction determines that the information is 'material' to the defense of the accused." (*Ibid.*) *Ritchie* partly reversed the Pennsylvania Supreme Court because the defendant's right to discover exculpatory information "does not include the unsupervised authority to search through the Commonwealth's files." (*Id.* at p. 59.) *Ritchie* affirmed the Pennsylvania Supreme Court's remand for further proceedings because "Ritchie is entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial." (*Id.* at p. 58.)

The high court addressed the commonwealth's argument that Ritchie was "not entitled to disclosure because he did not make a particularized showing of what information he was seeking or how it would be material." (*Ritchie*, *supra*, 480 U.S. at p. 58, fn. 15.) The court stated: "Ritchie, of course, may not require the trial court to search through the CYS file without first establishing a basis for his claim that it contains material evidence. See *United States v. Valenzuela-Bernal*, 458 U. S. 858,

22

867 (1982) ('He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense'). Although the obligation to disclose exculpatory material does not depend on the presence of a specific request, we note that the degree of specificity of Ritchie's request may have a bearing on the trial court's assessment on remand of the materiality of the nondisclosure." (*Ritchie*, at p. 58, fn. 15.)

In *Johnson*, our Supreme Court relied on *Ritchie* for its holding "that when confidential records might contain exculpatory material, the trial court's in camera review of those records, followed by disclosure to the defense of any *Brady* material that review uncovers, is sufficient to protect the defendant's due process rights." (*Johnson*, *supra*, 61 Cal.4th at p. 717.) *Johnson* also examined *J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, which rested its decision on *Ritchie* and held that when the defense files a " 'petition requesting that the court review a confidential juvenile file and provides a reasonable basis to support its claim that the file contains *Brady* exculpatory or impeachment material, the juvenile court is required to conduct an in camera review.' " (*Johnson*, at pp. 717–718, quoting *J.E. v. Superior Court*, at p. 1333.) *Johnson* concluded that "the procedure used for confidential juvenile records in *Ritchie* [citation] and *J.E. v. Superior Court* [citation] works just as well for confidential personnel records." (*Johnson*, at p. 718.)

*Ritchie* supports our conclusion here. The prosecutor's notice to Serrano that Deputy Halloran's personnel file contains potential *Brady* material, together with counsel's declaration explaining that Halloran is the prosecution's sole witness to many of the events leading to Serrano's arrest, is sufficient to establish his claim that Halloran's file contains potential impeachment evidence that may be material to his defense.

23

Nothing more is required to trigger the trial court's in camera review.

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue, directing the trial court to vacate its May 17, 2017 order denying Serrano's motion for pretrial discovery and to issue a new and different order granting same.

CERTIFIED FOR PUBLICATION

LUI, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.