Filed 8/27/20  P. v. Salas CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B295563 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA117671) |
| v. | |
| GERRARDO SALAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Judgment conditionally reversed and remanded with directions.

Kiran Prasad, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Gerrardo Salas appeals the judgment entered following his conviction by jury of fleeing a pursuing peace officer while driving recklessly (Veh. Code, § 2800.2) and hit and run driving resulting in property damage (Veh. Code, § 20002, subd. (a)). The sole issues on appeal[1] concern the trial court's handling of Salas's motions for discovery of police personnel records under the doctrines of *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (*Brady*), *People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 721, and Evidence Code sections 1043 and 1045 (*Pitchess*[2] motion). We have jurisdiction under Penal Code section 1237.

## FACTUAL BACKGROUND

On October 14, 2017, Pomona Police Department (PPD) Officer Thomas De La Vega was on patrol. Officer De La Vega was driving slowly, using a spotlight to illuminate vehicles in the area. At around 11:25 p.m., a Ford Explorer drove past him in the opposite direction. Officer De La Vega shone his spotlight into the car, and saw the driver. The driver was wearing a blue tank top and had tattoos on his neck and left arm. The driver and the officer were approximately five feet apart when the Ford Explorer drove past Officer De La Vega.

---

[1] Salas's opening brief also included a challenge to sentencing enhancements based on prior felony convictions, but that issue was addressed in a separate habeas corpus proceeding, case No. B303833, in which this court ordered the trial court to strike the enhancements. Salas has withdrawn this issue from the present appeal.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

Shortly after the Ford Explorer drove past him, Officer De La Vega looked in his rear-view mirror and noticed that it failed to stop at a stop sign as it made a right turn from Laurel Avenue onto Dudley Street heading northbound.  Officer De La Vega made a U-turn and pursued the Ford Explorer to conduct a traffic stop for the moving violation.  As he did so, Officer De La Vega noticed another patrol vehicle already driving northbound on Dudley Street.  PPD Officer Bennett was driving the other patrol vehicle.  Officer Bennett activated his lights and siren and followed the Ford Explorer.

Initially, the Ford Explorer started to pull over.  It then took off down the roadway, running through a stop sign.  The officers pursued the vehicle as it drove through more stop signs, crossed over onto the wrong side of the road moving at a high speed, and ultimately crashed into a tree in the front yard of a house.  Officer De La Vega radioed dispatch, informing them that he was terminating pursuit as the vehicle had crashed.  The driver fled the crashed Ford Explorer.  The police conducted a search for the driver, but were unable to locate him.  In his conversation with dispatch, Officer De La Vega described the driver as "Hispanic, tank top, tattoos on arm."

After the crash, Officer Bennett notified Officer De La Vega that he had found some Polaroid photographs in the Ford Explorer.  Officer De La Vega immediately identified the person in the pictures, Salas, as the driver of the car.  Officer De La Vega ran the license plate and determined that Salas was the owner of the Ford Explorer.

Salas took the stand and claimed that he was not the driver of the Ford Explorer during this incident.  Salas testified that he had purchased the vehicle from a private seller two weeks earlier,

and a release of liability dated October 3, 2017, was on file with the DMV. Salas had not yet formally registered the vehicle in his name. He further testified that the Ford Explorer had been stolen earlier that same evening while he was at a friend's house. Accordingly, he was not driving the Ford Explorer on the night of October 14, 2017. He further testified that he did not report the car stolen that night. Rather, he reported it stolen the following day, October 15, 2017, to the Pomona police station. Salas acknowledged that he had five prior felony convictions.

Officer De La Vega was recalled by the prosecution as a rebuttal witness. He testified that he had contacted both the Pomona and Montclair police departments. Neither had any record of a report by Salas of a stolen vehicle.

The jury deliberated and returned verdicts of guilty on both counts. Salas was sentenced to three years on the first count (fleeing a pursuing peace officer's motor vehicle while driving recklessly in violation of Veh. Code, § 2800.2) and a consecutive six months on the second count (hit and run driving resulting in property damage in violation of Veh. Code, § 20002, subd. (a)).

## DISCUSSION

Salas's contentions on appeal center on the handling of a series of efforts by his defense counsel to obtain personnel file and related information concerning the key prosecution witness, Officer De La Vega.[3] Officer De La Vega was the sole witness

---

[3] Salas also challenges the trial court's failure to grant *Pitchess/Brady* motions directed to the records of the second officer, Officer Bennett. We agree with the trial court that Salas failed to demonstrate that the records of Officer Bennett would contain information material to this case, and find there was no

providing direct testimony that put Salas behind the wheel of the fleeing vehicle; thus, defense counsel plausibly asserted that information that might challenge Officer De La Vega's credibility could be material. We will review the chronology of these efforts, and then examine the trial court's compliance with applicable standards.

## A. The *Brady* and *Pitchess* Motions

### 1. *Salas's Initial Motion*

On May 17, 2018, Salas's counsel filed a notice of motion for discovery of *Brady* information in a police personnel file. A hearing date of June 14, 2018 was set. The PPD, as real party in interest, opposed the motion.

The hearing on this motion took place on June 14, 2018 before Judge Steven D. Blades. From this hearing it emerged that the prosecutor's office had previously sent an email to defense counsel stating, "In a previous case, [No.] KA115596, the court granted the defense's *Pitchess* motion as to Officer Thomas De La Vega." This information derived from an automatic check performed by the district attorney's discovery compliance unit whenever a police officer is subpoenaed to testify. The prosecutor did not have any further information about what transpired in the other case, nor what, if any, information was actually disclosed in that case. Though the deputy district attorney had not specifically referred to *Brady* in this email, the defense attorney inferred that there might be *Brady* material in the officer's file.

---

abuse of discretion in denying the motions relating to Officer Bennett. (See *People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

After extensive colloquy, the trial court observed: "[T]he argument by the defense is that Officer De La Vega falsified his identity of [Salas], or lied, or whatever. . . . So it seems to me that the fair thing to do, since nobody knows whether this is *Brady* material or not, is for me to look at it in camera to decide whether it is *Brady* material. That way nobody is guessing and—I think that's the fair thing to do. . . . At this point I'm going to grant the motion to review the records in camera."

The court then conducted in camera proceedings to review the material provided by the PPD. These proceedings were recorded stenographically and the transcript sealed. In these proceedings, the court describes the material being reviewed.

Significantly, during the in camera proceedings, the court advised the custodian of records that it intended to review *only* the particular item that had been the subject of the *Pitchess* proceedings in the other case. The court specifically stated that it was *not* treating this motion as a *Pitchess* motion. From what the record indicates, the court did not review any other contents of Officer De La Vega's personnel records apart from the one item that was the subject of the *Pitchess* motion in the other case. After reviewing this item, the court stated the intention to inform the defense that after reviewing the file, there is no *Brady* material present.

On returning to the bench, the court announced: "I have conducted an in camera review of the information supplied to the defense by [the prosecutor], and without making any comments about the reason this was disclosed in another case, I don't see anything remotely relevant to *Brady,* or even *Pitchess,* with regard to this case. There's just nothing in there. I'll just leave it at that. There's just nothing in there. That's it."

6

### 2. *Salas's Second Motion*

A preliminary hearing was held on July 12, 2018, at which the prosecution called Officer De La Vega to testify. Officer De La Vega indicated that he had gotten a good look at the driver of the Ford Explorer as the vehicles passed one another, and identified Salas as the driver. Officer De La Vega further testified that he recognized Salas from photographs that were found in the Ford Explorer after the crash. The court found that offenses had been committed and there was sufficient evidence to hold Salas to answer for them.

On July 18, 2018, Salas's counsel filed a new "motion for pretrial discovery including civil service commission (*Pitchess* and *Brady*)." This motion requested wide-ranging information concerning both Officer De La Vega and Officer Bennett.[4] The PPD, as real party in interest, again opposed the motion.

---

[4] The requested information included the following:

"(1) All complaints from any and all sources relating to acts of violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, false arrest, perjury, dishonesty, writing of false police reports, planting of evidence, false or misleading internal reports including but not limited to false overtime or medical reports, and any other evidence of misconduct amounting to moral turpitude within the meaning of *People v. Wheeler* (1992) 4 Cal.4th 284 against Officers W. Bennett . . . and T. De La Vega . . . . [¶] . . . [¶] . . .

"(3) Any other material which is exculpatory or impeaching within the meaning of *Brady* . . . .

"(4) The names, addresses, contact information, and transcripts of testimony of all persons who testified at any Civil Service Commission hearing(s) wherein the named officers were

The hearing on this second motion took place on August 24, 2018, before Judge Thomas C. Falls.  There was extensive colloquy with defense counsel as to whether good cause existed for granting review of either officer's records.  Most important for our purposes, it is apparent that Judge Falls was not aware of the limitation that Judge Blades had put on his review at the May 17, 2018 hearing, namely, that he only would review the one specific item that had been disclosed in the *Pitchess* motion in the other case.  Rather, Judge Falls, in recounting his understanding of the May 17, 2018 hearing, clearly believed that Judge Blades had looked at *all* of the personnel records for Officer De La Vega:

"The Court:  Maybe I'm not explaining myself properly, and that's entirely possible.  With regard to judicial economy, the court went in.  Can we agree you were there?

"[Defense Counsel]:  Yes.

"The Court:  The city attorney was there.  The court took the city attorney and custodian of records back into chambers.  Correct?

"[Defense Counsel]:  Yes.

"The Court:  *I think that's a fair assumption.  They looked through not only complaints, but they looked through personnel records because it was more expansive.*  Correct?

"[Defense Counsel]:  I would imagine so.  They did go back there.

"The Court:  Your complaint would be on a writ with the appellate court with what Judge Blades did.  I don't think he did anything inappropriate.  I don't think he did anything wrong.  I think he's fairly well recognized as an expert in *Pitchess*, but my

accused of any of the misconduct sought in items 1 and 3, above. . . ."

point is, what could possibly he have looked at that wouldn't have covered anything you want in here?  In other words, it's—you' re seeking the same thing from a different court."  (Italics added.)

This belief on the part of Judge Falls carried over into his final ruling on this second motion:  "[Y]ou've already had a *Pitchess* [motion] on [Officer] De La Vega. . . .  You got it granted, and the court went in and did a thorough look because *I have no reason to doubt that Judge Blades did exactly what he should have done and looked not only at the complaints but at the personnel file to find any* Brady *material whatsoever and came back and had nothing. . . .*  What I see in front of me, one, as to [Officer] De La Vega has already been run.  This is a second bite at the apple.  It's denied for that reason."  (Italics added.)

3.    *Salas's Third Motion*

On September 28, 2018, Salas's defense counsel filed a third motion, notice of motion for pretrial discovery including civil service commission (*Pitchess* and *Brady*).  This motion was substantially identical to the second motion, except that additional statements concerning the disclosure leading to the May 17, 2018 hearing were added to defense counsel's supporting declaration.  The PPD again opposed the motion.

The hearing on this third motion was again assigned to Judge Falls and took place on October 25, 2018.  The court again denied the motion, again based on the court's apparent belief that a full *Pitchess* review had already been performed:  "I believe a finding was made.  The file was reviewed for purposes of *Brady*, which, oddly enough, would have encompassed the materials sought in the *Pitchess* [motion] even though we treat it differently.  Nothing was disclosed because there was nothing to be found. . . .  I don't find that the declaration submitted by

9

[defense counsel] is sufficient. *Pitchess* [motion] is denied, and this is the third try at it, so I'm denying this with prejudice."

## B. The Trial Court's Handling of These Motions

"When a party brings a *Pitchess* motion, the trial court is required to keep a record of what it reviewed to provide meaningful appellate review." (*People v. Superior Court (Johnson)*, *supra*, 61 Cal.4th at p. 719.) In this case, the record is adequate for our review, but it reveals a gap that needs to be addressed with respect to Officer De La Vega. Before considering this issue, however, there are two matters where we find no fault with the trial court's handling of these motions.

First, based on the record made of the first motion (including the sealed transcript, which we have reviewed), we are satisfied that the particular document examined by Judge Blades in the first motion (the document disclosed in a previous unrelated case) would not have been material to this case, and need not have been disclosed.

Second, we are satisfied that neither the second nor third motions demonstrated good cause to examine the records of Officer Bennett, whose role in the events here was not material to the prosecution's case or Salas's defense. Significantly, unlike Officer De La Vega, there had been no notification by the prosecutor to defense counsel that Officer Bennett's file might contain *Brady* information. This immediately distinguishes his situation from the one addressed in *Serrano v. Superior Court* (2017) 16 Cal.App.5th 759, where such notice *had* been given.[5]

---

[5] "The prosecutor's notice to [the defendant] that [the deputy's] personnel file contains potential *Brady* material, together with counsel's declaration explaining that [the deputy] is

In addition, Salas failed to establish a plausible factual foundation for a putative defense that would make Officer Bennett's personnel records material for *Pitchess* purposes. (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316.) Officer Bennett's police report of this incident stated that Officer De La Vega had told him that he (De La Vega) had seen Salas fleeing from the vehicle after it crashed. Officer De La Vega testified that he did *not* make that statement to Officer Bennett, and its appearance in Officer Bennett's report was apparently the result of miscommunication. Salas furnished no plausible defense involving Officer Bennett that could be based on this discrepancy. Thus, Judge Falls was well within his discretion in denying the second and third motions as to Officer Bennett. (*People v. Samayoa*, *supra*, 15 Cal.4th at p. 827.)

We are, however, concerned about the handling of the three motions, taken together, with respect to the examination in camera of Officer De La Vega's personnel records. The record shows three things:

(1) The only aspect of Officer De La Vega's personnel records that was ever examined by the trial court in camera was the single item that had previously been identified in response to a *Pitchess* motion in a different criminal case.

(2) No other matters in Officer De La Vega's records were ever examined in camera. The sealed transcript from the first

_____

the prosecution's sole witness to many of the events leading to [the defendant's] arrest, is sufficient to establish his claim that [the deputy's] file contains potential impeachment evidence that may be material to his defense. Nothing more is required to trigger the trial court's in camera review." (*Serrano v. Superior Court, supra,* 16 Cal.App.5th at p. 778.)

11

motion makes that clear as to the first motion.  Nothing in the record indicates that any further examination in camera was made at any subsequent time.  The next two motions were denied without any additional examination being performed.

(3) The trial court handling the second and third *Pitchess/Brady* motions plainly had the mistaken belief that *all* of Officer De La Vega's relevant records had been examined by the judge in connection with the first motion.  This was specifically articulated as a ground for denying the second and third motions.[6]  Such examination had not, however, been performed by the trial court.

"A criminal defendant, on a showing of good cause, is entitled to discovery of information in the confidential personnel records of a peace officer when that information is relevant to defend against a criminal charge."  (*People v. Gaines* (2009) 46 Cal.4th 172, 176.)  The trial court's ruling on a motion to discover police officers' personnel records is reviewed for abuse of discretion (*People v. Hughes* (2002) 27 Cal.4th 287, 330), and denial of such a motion may be found harmless where "extensive

---

[6] With the benefit of hindsight, if Judge Blades had made clear in the *public* record the limited scope of his review as part of the first motion or alternatively treated the first motion as a *Pitchess* motion and therefore reviewed the remaining personnel records for Officer De La Vega that the PPD's custodian apparently had with him that day, events would likely have unfolded differently.  But hindsight is always 20/20.  Because the first motion was aimed specifically at the item that Judge Blades actually reviewed, his limited review is understandable in the context of that motion.  It did, however, lead Judge Falls to make the incorrect assumption that Judge Blades's review was more extensive than it actually was.

evidence" links the defendant to the crime. (*People v. Samuels* (2005) 36 Cal.4th 96, 110.)

In this case, the jury's verdict indicates that it must have credited Officer De La Vega's testimony identifying Salas as the driver of the Ford Explorer, and did not believe Salas's testimony that he was not the driver. Combined with the circumstantial evidence that the Ford Explorer belonged to Salas (which Salas did not dispute), there was ample evidence for the jury's verdict.

However, Officer De La Vega's eyewitness testimony was the key evidence linking Salas to the Ford Explorer. The trial judge who considered the first motion seeking review of Officer De La Vega's personnel records found sufficient good cause to do so. Hence, we cannot assume that it was harmless error to deny the review of Officer De La Vega's remaining records as sought in the second and third motions. This is not to suggest that there may actually be anything in those records that would have merited disclosure pertinent to this case. On the record before us, we simply cannot tell because the trial court reviewed a limited record.

The California Supreme Court has provided guidance as to the appropriate course for us to take here. In *People v. Gaines*, *supra*, 46 Cal.4th at p. 180, the court explained: "[T]he proper remedy when a trial court has erroneously rejected a showing of good cause for *Pitchess* discovery and has not reviewed the requested records in camera is not outright reversal, but a conditional reversal with directions to review the requested documents in chambers on remand. [Citation.] '[Penal Code s]ection 1260 evinces a "legislative concern with unnecessary retrials where something less drastic will do." [Citation.] "[W]hen the validity of a conviction depends solely on an

13

unresolved or improperly resolved factual issue which is distinct from issues submitted to the jury, such an issue can be determined at a separate post-judgment hearing and if at such hearing the issue is resolved in favor of the People, the conviction may stand." [Citation.] In other words, "when the trial is free of prejudicial error and the appeal prevails on a challenge which establishes only the existence of an unresolved question which may or may not vitiate the judgment, appellate courts have, in several instances, directed the trial court to take evidence, resolve the pending question, and take further proceedings giving effect to the determination thus made." [Citation.]' [Citation.]"

Accordingly, "when a trial court has failed to review the *Pitchess* documents at all, it is appropriate to remand the case to permit the trial court to review the requested documents in chambers and to issue a discovery order, if warranted." (*People v. Gaines*, *supra*, 46 Cal.4th at p. 181.) If, after reviewing the confidential materials in chambers, the trial court determines that the requested personnel records contain no relevant information, the judgment should be reinstated. (*Ibid.*) If the trial court determines on remand that relevant information exists and should be disclosed, "the trial court 'must order disclosure, allow [defendant] an opportunity to demonstrate prejudice, and order a new trial if there is a reasonable probability the outcome would have been different had the information been disclosed.' " (*Id.* at p. 181; see also *id.* at p. 182 ["To obtain relief, then, a defendant who has established that the trial court erred in denying *Pitchess* discovery must also demonstrate a reasonable probability of a different outcome had the evidence been disclosed"].) (See *People v. Moreno* (2011) 192 Cal.App.4th 692,

14

703; *People v. White* (2011) 191 Cal.App.4th 1333, 1341-1342; *People v. Wycoff* (2008) 164 Cal.App.4th 410, 416.)

## DISPOSITION

The judgment is conditionally reversed.  The case is remanded to the trial court with directions to hold an in camera hearing on Salas's *Pitchess/Brady* motion with respect to officer De La Vega in conformance with the procedures described in this opinion.  The trial court shall make a proper record of the documents reviewed, by either retaining a copy of the documents (to be maintained under seal) or preparing a detailed description of the documents (also maintained under seal) that will permit appellate review of all documents produced for inspection.  If the court finds that new disclosures should be made, the disclosures shall be made, and the court shall permit Salas the opportunity

to demonstrate prejudice and may grant a new trial if the requisites for such an order are met.  If the court finds that no information was discoverable or that Salas cannot demonstrate such prejudice, the court shall reinstate the judgment of conviction and sentence.

NOT TO BE PUBLISHED

SINANIAN, J.*

We concur:


CHANEY, J.


BENDIX, Acting P. J.

_____

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16